1 | Colin H. Murray, State Bar No. 159142
2 | Kevin D. Whittaker, State Bar No. 224700
| Daniel G. Valles, State Bar No. 269137
| Benjamin R. Buchwalter, State Bar No. 301130
3 | **BAKER & McKENZIE LLP**
| Two Embarcadero Center, Suite 1100
4 | San Francisco, CA 94111-3802
| Telephone:  + 1 415 576 3000
5 | Facsimile:  + 1 415 576 3099
| Email:    Colin.Murray@bakermckenzie.com
6 |          Kevin.Whittaker@bakermckenzie.com
|          Daniel.Valles@bakermckenzie.com
7 |          Ben.Buchwalter@bakermckenzie.com

8 | Attorneys for Plaintiff
| FREEMAN EXPOSITIONS, INC.

9

10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| FREEMAN EXPOSITIONS, INC., a Texas Corporation, | Case No.  8:17-CV-00364-CJC-JDE |
|---|---|
| Plaintiff, | **PLAINTIFF FREEMAN EXPOSITIONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** |
| vs. | |
| GLOBAL EXPERIENCE SPECIALISTS, INC., a Nevada Corporation, and DOES 1-50, | |
| Defendants. | Complaint Filed: February 24, 2017 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .............................................................................. 1

II.  RELEVANT FACTS ......................................................................... 2

    A.   Nevada Based GES Unlawfully Prohibits its Former Employees from Working for Freeman in California............................................ 2

    B.   In January 2017, Shores Resigned from GES to Work for Freeman in California and GES Threatened and Intimidated Shores to Prevent Him this Employment ..................................................... 3

    C.   Despite GES's Threats and Intimidation, Shores Relocated to Anaheim to Work for Freeman ............................................. 5

    D.   In Early February 2017, GES Filed An Action Against Shores in Nevada State Court Seeking to Enforce Its Non-Compete Agreement ............................................................................ 5

    E.   On February 24, 2017, Freeman Filed A Complaint in California Seeking to Prevent the Enforcement of the Non-Compete Agreement, and GES Removed it to this Court ......................................... 5

III. LEGAL STANDARD ...................................................................... 6

IV.  LEGAL ANALYSIS ........................................................................ 6

    A.   Freeman Will Succeed On the Merits Because California Law Prohibits the Enforcement of Non-Compete and Customer Non-Solicitation Agreements ......................................................... 6

        1.   GES's Non-Compete Agreement Unlawfully Prohibits Individuals From Engaging in Employment in California ............. 7

        2.   GES's Non-Compete Agreement Attempts to Unlawfully Restrain Freeman's Right to Hire the Personnel of Its Choice in California ............................................................... 8

        3.   The Non-Compete Agreement's Customer Non-Solicitation Clause Also Violates California Law ......................................... 11

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

i

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

<u>**TABLE OF CONTENTS**</u>
**(continued)**

<u>**Page**</u>

B.    Denying This Application For a Temporary Restraining Order Will
       Cause Freeman Irreparable Harm ............................................................ 12

C.    The Balance of Equities Favors Freeman Because the Temporary
       Restraining Order Will Not Harm GES .................................................. 16

D.    The Public Interest Favors Preserving the Status Quo While This
       Litigation Progresses ................................................................................ 18

V.    CONCLUSION ................................................................................................ 19

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

ii
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **CASES**

4
5
*3M Unitek Corp. v. Ormco Co.*,
    96 F. Supp. 2d 1042 (C.D. Cal. 2000) ................................................ 6

6
7
*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ............................................................ 6

8
9
*Am. Credit Indemnity Co. v. Sacks*,
    213 Cal. App. 3d 622 (1989) ............................................................ 12

10
11
*Application Grp. v. Hunter Grp.*,
    61 Cal. App. 4th 881 (1998) ....................................................*passim*

12
*Bayer Corp. v. Roche Molecular Sys.*,
    72 F. Supp. 2d 1111 (N.D. Cal. 1999) ............................................. 16

13
14
*Cel-Tech Comm'cs v. L.A. Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) ...................................................................... 10

15
16
*Colin ex rel. Colin v. Orange Unified Sch. Dist.*,
    83 F. Supp. 2d 1135 (C.D. Cal. 2000) ............................................. 18

17
18
*Comedy Club, Inc. v. Improv W. Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) .......................................................... 10

19
20
*Edwards v. Arthur Andersen LLP*,
    44 Cal. 4th 937 (2008) ........................................................................ 7

21
22
*GlobeSpan, Inc. v. O'Neill*,
    151 F. Supp. 2d 1229 (C.D. Cal. 2001) .............................................. 7

23
*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ...................................................................... 11

24
25
*Little v. Auto Stiegler, Inc.*
    29 Cal. 4th 1064 (2003) .................................................................... 14

26
27
*M.R. v. Dreyfus*,
    663 F.3d 1100 (9th Cir. 2011) .......................................................... 19

28

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

iii

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

# TABLE OF CONTENTS
### (continued)

**Page**

*Moss, Adams & Co. v. Shilling*,
179 Cal. App. 3d 124 (1986) ................................................................. 11-12

*Reliance GlobalCom Servs. v. Smart & Assocs., LLP*,
No. C 12-05950, 2013 U.S. Dist. LEXIS 43823 (N.D. Cal. Mar. 27,
2013) .............................................................................................................. 10

*Rodde v. Bonta*,
357 F.3d 988 (9th Cir. 2004) ....................................................................... 17

*Safelite Glass Corp. v. Crawford*,
25 Fed. Appx. 613 (9th Cir. 2002) ............................................................... 17

*Silguero v. Creteguard, Inc.*,
187 Cal. App. 4th 60 (2010) ........................................................... 7, 13, 14

*Thompson v. Impaxx, Inc.*,
113 Cal. App. 4th 1425 (2003) ..................................................................... 11

*Turner v. Anheuser-Busch, Inc.*
7 Cal. 4th 1238 (1994) .................................................................................. 13

*Winter v. NRDC*,
555 U.S. 7 (2008) ............................................................................................ 6

## STATUTES

Cal. Bus. & Prof. Code § 16600 ..................................................... *passim*

Cal. Bus. & Prof. Code § 17200 ..................................................... *passim*

Cal. Bus. & Prof. Code § 17200(4) .......................................................... 5

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

1       Freeman Expositions, Inc. ("Freeman"), which has offices throughout

2   California, submits this memorandum of points and authorities in support of its

3   application for a temporary restraining order against Nevada-based employer

4   defendant Global Experience Specialists, Inc. ("GES") to prevent it from violating

5   California's unequivocal prohibition against employee non-compete agreements.  In

6   addition, Freeman respectfully requests an order to show cause requiring GES to

7   establish why a preliminary injunction should not issue pending trial in this action.

8   **I.      INTRODUCTION**

9       Nevada-based employer GES is violating California's codified prohibition

10  against employee non-compete agreements by attempting to prevent Freeman from

11  hiring and/or retaining personnel of its choice in California.  GES has gone so far as to

12  file an action in Nevada against a current Freeman employee, Landon Shores

13  ("Shores").  In that action, GES is attempting to  enforce a non-compete agreement

14  against Shores that it required him to execute, which expressly prohibits Shores from

15  working for Freeman in California for 12 months following his departure from GES.

16  Not only does GES's action stifle the free movement of labor within California, it also

17  flies in the face of California's public policy and Business & Professions Code §

18  16600, each of which promote the right of California employers to hire the personnel

19  of their choice.

20      As detailed below, absent immediate Court relief, Freeman risks suffering

21  irreparable harm because it will be prevented from employing Shores in California

22  without any other adequate remedy at law.  In particular, if GES obtains a preliminary

23  injunction in Nevada, Shores will be forced to stop working for Freeman during the

24  non-compete period, despite Freeman's likely success on the merits here.  By the time

25  Freeman obtains judgment in this case, which could take more than a year, it would

26  have already suffered irreparable harm in that it would be forced either to terminate

27  Shores or to continue paying him for doing next to nothing.

28

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA  94111
+1 415 576 3000

1

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

To preserve Freeman's statutory rights, this Court should grant Freeman's Application for a temporary restraining order and preliminary injunction.  In particular, Freeman requests that the Court impose a temporary restraining order and preliminary injunction precluding GES from seeking to enforce its non-compete agreement in Nevada, or anywhere else, to the extent that: (1) such enforcement would prevent Freeman from employing Shores, or any other GES employee, in California; and (2) such enforcement would prevent Shores from being able to solicit any GES customers in California while employed by Freeman in California.  This relief is essential, as Freeman has no other adequate remedy at law.

To be abundantly clear, Freeman is not requesting that this Court restrain any court from taking any action.  Rather, Freeman is requesting an order restraining GES from seeking to enforce the Non-Compete Agreement against a California employer and/or its employees pending the outcome of this litigation.

## II.   RELEVANT FACTS

### A.   Nevada Based GES Unlawfully Prohibits its Former Employees from Working for Freeman in California

Headquartered in Las Vegas, GES is a Nevada corporation in the audio visual business and is a direct competitor of Freeman.  Upon hire, GES requires its employees to execute a "Non-Compete Agreement."  For example, in June of 2013, GES hired Landon Shores as a sales associate in Nevada.  (Declaration of Landon Shores ¶2.)  On September 27, 2013, and again on September 12, 2016, GES required Shores to execute virtually identical non-compete agreements.  (*Id.* ¶3.)

The Non-Compete Agreements expressly prohibit Shores, as well as any other GES employee who signed the Non-Compete Agreements, from working as an employee, consultant or otherwise "[f]or a period of twelve (12) months following the date of termination of [their] employment with [GES], whether terminated voluntarily or involuntarily, whether with or without cause, and whether or not [the] [e]mployee has or alleges to have a claim against [GES] . . . on the behalf of any third party that

2

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

[is] competitive with and/or similar to the services that [the] [e]mployee performed for [GES] during the last eighteen (18) months of his/her employment with [GES]." (*Id.* ¶3-4, Ex. A-B).  The Non-Compete Agreements also include a twelve month customer non-solicitation provision that prevents any employee from soliciting, contacting, or communicating with GES' customers or potential customers.  (*Id.*)  The September 27, 2013, Non-Compete Agreement states "[w]ithout limiting the foregoing, this [non-compete] restriction also applies specifically to . . . "The Freeman Companies."  (*Id.* ¶3, Ex. A.)[1]

The Non-Compete Agreements have virtually no geographical restriction, except that they are limited to the entire United States, nor do they make any carve out whatsoever for employees who work in California or relocate to California to work for a California employer.  (*Id.*)

### B.   In January 2017, Shores Resigned from GES to Work for Freeman in California and GES Threatened and Intimidated Shores to Prevent Him this Employment

On Friday January 6, 2017, Shores verbally resigned from GES and provided two week notice to his supervisor Tom Page ("Page"), GES' Director of Sales.  (*Id.* ¶5.)  In his resignation, Shores informed Page that he was moving to California to work for Freeman as a Senior Business Development Manager in Freeman's Anaheim, California office.  (*Id.*)

On Saturday, January 7, 2017, Daniel Higgins ("Higgins"), GES' Regional Vice President of Sales, and a resident of California, called Shores and informed Shores that GES intended to sue him to prevent him from working for Freeman.  (*Id.* ¶6.)  Higgins further threatened Shores, saying that he did not care that Shores already accepted a position with Freeman and that he "hope[d] [Shores] has enough money saved up to sit around and do nothing for a year."  (*Id.*)  Higgins told Shores that he "better not sign a lease" in California because GES was going to sue Shores to make

---

[1] By specifically identifying the "Freeman Companies," GES is intentionally singling out Plaintiff Freeman Expositions, Inc., which is also known in the marketplace as "The Freeman Companies." (*See* Shores Decl., Ex. A.)

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

3

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

1   sure he did not work for Freeman and that Shores "was going to be broke." (*Id.*)

2   Higgins went on intimidate Shores, saying GES would seek an injunction in Nevada

3   to prevent Shores from working in California for the next year and force Shores to

4   incur thousands of dollars in legal fees.  When Shores reiterated that he had already

5   signed an employment agreement, Higgins again tried to coerce Shores into breaking

6   his agreement with Freeman, or be faced with financial ruin. (*Id.*)

7   Later that same evening, Jeff Quade ("Quade"), Chief Sales Officer for GES,

8   also called Shores about his resignation.  Quade asked if Shores' decision was final.

9   (*Id.* ¶7.)  After Shores confirmed his decision was final, Quade leveled further threats

10  toward Shores, saying "[y]ou signed a non-compete agreement that is enforceable and

11  [GES] is going to sue you" and, "[y]ou are going to have no income for a year.  Do

12  you have the funds to pay for that?" (*Id.*)  Quade went on to intimidate, "[GES is]

13  going to sue you personally, so it is going to be very expensive for you." (*Id.*)  When

14  Shores' conversation with Quade concluded, Shores reiterated to Quade that he had

15  already accepted and agreed to the offer of employment with Freeman. (*Id.* ¶8.)

16  Quade continued bullying Shores, saying "[d]o you really want to go down this road?

17  I see two different paths.  One path is to remain with GES and the other path is to go

18  with Freeman and get sued and be broke. It is a lot easier to get out of an offer letter

19  than a non-compete agreement" and that Shores should think about that. (*Id.*)

20  On Monday January 9, 2017, Shores returned to GES to honor his two week

21  notice, but was promptly and hostilely walked out of the office by Page. (*Id.* ¶9.)  As

22  Shores was being walked out of the office by Page, Page yelled at Shores, "[i]f you

23  think a shit storm is going on now, it's just started." (*Id.* ¶10.)  Page went on to say

24  that he would "need a phone number and e-mail address, as [GES] is going to file a

25  restraining order against you so you can't work for Freeman." (*Id.*)

26  After his treatment by Higgins, Quade and Page, Shores felt threatened and

27  uncomfortable returning to GES' offices, and had a colleague promptly return GES'

28  property and confidential information in his possession and control on January 11,

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA  94111
+1 415 576 3000

4

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

2017.  (*Id.* ¶¶11-12.)  Shores has not retained, nor is he in the possession of any of, GES' property or confidential information.  (*Id.* ¶12)

### C. Despite GES's Threats and Intimidation, Shores Relocated to Anaheim to Work for Freeman

On January 23, 2017, Shores moved from Nevada to his current residence in Anaheim and is now a resident and citizen of the state of California.  (*Id.* ¶17.)  On February 2, 2017, Shores began working for Freeman in its Anaheim office.  (*Id.* ¶18.)

### D. In Early February 2017, GES Filed An Action Against Shores in Nevada State Court Seeking to Enforce Its Non-Compete Agreement

On February 7, 2017, GES served Shores in the lobby of Freeman's *Anaheim* office with a Complaint and a Motion for Preliminary Injunction that it filed in Clark County, Nevada ("Nevada Complaint and Motion for Injunction").  (*Id.* ¶20.)  The Nevada Complaint and Motion for Injunction seeks to prevent Shores from working with or performing work for Freeman anywhere in the United States, including California, for twelve months.  (*See id.*, Ex. C at 4, 13-14.)[2]  The hearing to determine whether the preliminary injunction will be granted is set for March 6, 2017, at 9:00 a.m. Pacific Standard Time.  (*Id.* ¶21.)

### E. On February 24, 2017, Freeman Filed A Complaint in California Seeking to Prevent the Enforcement of the Non-Compete Agreement, and GES Removed it to this Court

Freeman filed its Complaint in the Superior Court of the State of California, County of Orange, on February 24, 2017, stating causes of action for (1) declaratory relief; (2) intentional interference with contractual relations; (3) unfair business practices under B&P Code § 17200, and (4) unlawful business practices under B&P Code § 17200.  On February 28, 2017, Freeman filed an Application for Temporary Restraining Order and Order to Show Cause in the Orange County Superior Court.

---

[2] Although the Nevada Complaint and Motion for Injunction states in the facts section that the Non-Compete Agreement has a period of 12 months, the requested injunction does not have a time limit, and is therefore overbroad and unenforceable. (*See* Shores Decl., Ex. C at 13-14.)

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

5

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

1    Simultaneously, on February 28, 2017, GES removed this action to this Court.

2    Pursuant to this removal, the hearing on Freeman's California Application for

3    Temporary Restraining Order was taken off calendar.

4    **III.   LEGAL STANDARD**

5    A plaintiff seeking a temporary restraining order and preliminary injunction

6    must show that: (1) plaintiff is likely to succeed on the merits; (2) plaintiff is likely to

7    suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities

8    tips in the plaintiff's favor; and (4) an injunction is in the public interest.  *Winter v.*

9    *NRDC*, 555 U.S. 7, 20 (2008).  The Ninth Circuit acknowledges that the elements of

10   this test "are balanced, so that a stronger showing of one element may offset a weaker

11   showing of another."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131

12   (9th Cir. 2011).  The grant or denial of injunctive relief is within the discretion of the

13   district court."  *3M Unitek Corp. v. Ormco Co.*, 96 F. Supp. 2d 1042, 1045 (C.D. Cal.

14   2000).  Based on the foregoing, Freeman is entitled to a temporary restraining order

15   against GES's attempt to enforce an unlawful Non-Compete Agreement in California

16   **IV.   LEGAL ANALYSIS**

17   **A.   Freeman Will Succeed On the Merits Because California Law**
     **Prohibits the Enforcement of Non-Compete and Customer Non-**
18   **Solicitation Agreements**

19   All four causes of action in Freeman's Complaint affirm California's public

20   policy against non-compete agreements, the right of individuals to freely seek

21   employment in California, and the statutory right of employers to hire employees of

22   their choice in California.  These factors weigh clearly in favor of granting the

23   temporary restraining order to preserve Freeman's current status quo, i.e., its

24   employment of Shores in California.  Despite Freeman's likely success on the merits,

25   absent a temporary restraining order and preliminary injunction, GES would be able to

26   prevent Shores from working for Freeman during the pendency of this litigation.

27

28

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

6

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

Freeman will prevail on its claims for declaratory relief and unfair and unlawful business practices under B&P Code § 17200[3] because: (1) the Non-Compete Agreement cannot restrain employees from engaging in lawful professions in California under § 16600; (2) the Non-Compete Agreement cannot be applied to Freeman because it violates the statutory right of employers to hire the personnel of their choice in California under § 17200; and (3) the customer non-solicitation portion of the Non-Compete Agreement is itself unenforceable under California law.

**1.    GES's Non-Compete Agreement Unlawfully Prohibits Individuals From Engaging in Employment in California**

California law expressly prohibits out-of-state employers from attempting to restrain individuals from engaging in lawful professions in California.  B&P Code § 16600 specifically states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." As such, covenants not to compete are invalid under § 16600 even if they are narrowly drawn.  *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 955 (2008); *see also GlobeSpan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1234 (C.D. Cal. 2001) ("Section 16600 expresses California's strong public policy in favor of employee mobility.").  This protects Californians and ensures "that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." *Edwards,* 44 Cal. 4th at 946.  "California courts 'have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat.'" *Silguero v. Creteguard, Inc.*, 187 Cal. App. 4th 60, 68 (2010).

Here, GES has violated B&P Code § 16600 by requiring Shores to execute a contract that prohibits him from working for Freeman in California.  No exception within GES's Non-Compete Agreement is made for employees who relocate to California to work.  GES has aggressively sought to limit employee mobility and

---

[3] Freeman also has a strong likelihood of success on its claim for intentional interference with contractual relations, but the application for temporary restraining order is not premised on this claim.

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

7

work within California through the conduct of its executives, designed to enforce the Non-Compete Agreement.  For example, immediately after Shores informed his superiors that he intended to move to California and work for Freeman, they threatened him by claiming that GES would break him financially if he went to work for Freeman.  GES then filed an action against Shores in Nevada and served him in Anaheim—at Freeman's offices—in an attempt to enjoin Shores from working in California for Freeman.  GES's undisputable attempt to enforce an unlawful employee non-compete agreement in California establishes that Freeman will prevail in this action and weighs in favor of granting this application for a temporary restraining order and preliminary injunction.

> **2.    GES's Non-Compete Agreement Attempts to Unlawfully Restrain Freeman's Right to Hire the Personnel of Its Choice in California**

Freeman will succeed on its claims for declaratory relief and unfair and unlawful business practices because California law prohibits out-of-state employers from attempting to restrain California employers from hiring the personnel of their choice in California.  *Application Grp. v. Hunter Grp.*, 61 Cal. App. 4th 881, 901 (1998).  In particular, the court in *Application Group* recognized that when invoked by an employer, B&P Code sections 16600 and 17200 ensure that California employers are "able to compete effectively for the most talented, skilled employees in their industries, wherever they may reside." *Id.*  Further, *Application Group* explicitly states that B&P Code sections 16600 and 17200 protect California "employers and their employees from anticompetitive conduct by out-of-state employers" based on a non-compete agreement to which the California employer is not a party.  *Id.*  For this reason, the mere use of a non-compete agreement by an out-of-state employer to prevent employees from obtaining employment in California is an express violation of B&P Code § 17200.  Such a violation gives rise to an employer's immediate right to sue for declaratory relief and unfair and unlawful business practices in California, and makes the claim ripe as soon as the

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA  94111
+1 415 576 3000

8

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

former employer takes efforts to enforce the non-compete agreement, which GES has done here. *Id.* at 907-908.

For the protections of B&P Code sections 16600 and 17200 to apply to an employer's right to hire talented personnel, a recruited employee need not have even had any prior contact with California; rather the employee need only be "engaged in a business or profession in California," which means he or she is employed and working in California for an employer located in the state of California. *Id.* at 905. This standard is easily met here as Shores: (1) moved to California and is now a resident of the state of California; (2) is employed by and works for Freeman, a corporation licensed to do business in and with offices located throughout California, in California; and (3) services California clients as a routine part of his job. Freeman will succeed on the merits because California courts will not enforce the Non-Compete Agreements at issue against an employer located in California who has hired a California resident for a position in California servicing California clients. *Id.*

California's public policy against non-compete agreements is intended to protect the very rights that Freeman is attempting to protect here. Freeman, an employer with significant operations and multiple offices in California, hired Shores as its ideal candidate for the Senior Business Development Manager position. When Shores told GES of his acceptance of the position at Freeman, GES—through Higgins', Quade's, and Page's actions—threatened and intimidated him, in an effort to coerce Shores into breaching his agreement to work for Freeman. GES threatened that it would not only restrain Shores from working for Freeman in California, but would try to ruin him financially in the process. Further, GES filed an application for preliminary injunction in Nevada that on its terms would prohibit Shores from working in California, and served Shores in Freeman's offices in Anaheim. GES' conduct tramples upon the rights of Freeman by threatening its employee with financial ruin, and circumventing California law by attempting to enforce the Non-Compete Agreement in California. *Id.* While GES can attempt to enforce the Non-

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA  94111
+1 415 576 3000

Compete Agreement in any other state that does not have California's expressed public policy against non-compete agreements, this Court's declaration regarding California's law with respect to non-compete agreements is necessary to protect the rights the California legislature has guaranteed to California employers.

GES' inability to restrain Freeman from continuing to employ Shores is emphasized by the fact that Freeman is not a party to the Non-Compete Agreements, and can therefore not be bound by their terms.  California law expressly protects employers from "litigation based on a covenant not to compete **to which the California employer is not a party**."  *Application Grp.*, 61 Cal. App. 4th at 901 (emphasis added).  Further, federal courts consistently issue orders protecting companies from attempts to enforce agreements to which the company was not a party.  *See, e.g.*, *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (quoting *Buckner v. Tamarin*, 98 Cal. App. 4th 140 (2002)) ("The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement."); *Reliance GlobalCom Servs. v. Smart & Assocs., LLP*, No. C 12-05950, 2013 U.S. Dist. LEXIS 43823, at *23 (N.D. Cal. Mar. 27, 2013) (denying motion to stay federal litigation because one of the parties was not a party in the parallel state court action).  Here, Freeman was not a party to the Non-Compete Agreement and should not be bound by it.  *See Application Grp.*, 61 Cal. App. 4th at 901.

Once the Court declares that B&P Code sections 16600 and 17200 prohibit GES from attempting to restrain Freeman from hiring the personnel of its choice in California, Freeman's third claim for unfair business practices will also succeed because the California Supreme Court has found that violations of B&P Code § 17200 give rise to a claim for unfair business practices even if the underlying conduct is not unlawful.  *Cel-Tech Comm'cs v. L.A. Cellular Telephone Co.*, 20 Cal. 4th 163, 193 (1999).  Here, even if the Court determines that GES' conduct was not unlawful, GES has already taken extensive actions, including threats and

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

10

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

intimidation tactics, to prevent Shores from working for Freeman in California as well as enforce the Non-Compete Agreements in California, which in and of themselves are violations of B&P Code § 17200.

Freeman will also succeed on its fourth claim for unlawful business practices because a violation of an underlying law—such as the enforcement of an out-of-state non-compete agreement in violation of B&P Code § 16600—independently gives rise to an unlawful business practices claim. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). GES is presently attempting in the Nevada Complaint and Motion for Injunction to enforce the Non-Compete Agreement to restrain Shores from working for Freeman in California. This also, in and of itself, is an unlawful business practice under B&P Code § 17200, as GES is attempting to restrain Freeman from hiring the personnel of its choice in California, and Freeman's likely success on this issue supports the temporary restraining order. *Id.*

### 3. The Non-Compete Agreement's Customer Non-Solicitation Clause Also Violates California Law

Freeman will also succeed on its claim that GES' non-solicitation clause violates B&P Code § 16600 by prohibiting its former employees from soliciting any GES customers in California. In California, such non-solicitation provisions are considered to be de facto non-compete provisions and are themselves "void as unlawful business restraints except where their enforcement is necessary to protect trade secrets." *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1429 (2003) (quoting *Moss, Adams & Co. v. Shilling*, 179 Cal. App. 3d 124, 129 (1986)). Like non-competes, customer non-solicitation clauses themselves run afoul of B&P Code § 16600. *See id.* at 1428-29.

Here, the non-solicitation provision in the Non-Compete Agreements at issue are not necessary to protect any trade secrets because GES has not alleged in its Compliant and Motion for Injunction or Notice of Removal, or identified any evidence, that Shores has or will endanger GES' trade secrets. (Shores Decl., Ex. C;

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

ECF No. 1).  Nor has GES alleged, or will be able to present any evidence, that their customer lists or contact information warrant trade secret protection under California law because customer lists are not trade secrets when the employee at issue became acquainted with such customers while employed by the former employer.  *Moss*, 179 Cal. App. 3d at 129; *see also Am. Credit Indemnity Co. v. Sacks*, 213 Cal. App. 3d 622, 633 (1989) ("Free competition prevails in the absence of a trade secret customer list.").  GES cannot claim trade secret protection here because its Nevada Complaint and Notice of Removal do not allege that Shores has access to any customer list that was not obtained from his own personal interaction while employed by GES.  (*See* Shores Decl., Ex. C; ECF No. 1)

While employed for GES, the vast majority of Shores' clients were based in Nevada, but in his current role for Freeman, all of his clients are based in California.  (Shores Decl. ¶4.)  In fact, to date, all of the sales Shores has generated for Freeman have been generated from leads that he developed in California.  (*Id.* ¶14.)  As such, there is no overlap of clients that Shores solicits in the two markets.  (*Id.* ¶15.) Finally, Shores has not asked, and does not intend to ask, a single client or show organizer that he secured for GES to stop using GES' services. (*Id.* ¶16.).

Because absolutely no evidence indicates that Shores will disclose GES trade secrets or that GES' customer lists and contact information rise to the level of trade secret protection under California law, the customer non-solicitation clause is not necessary to protect trade secrets and cannot be enforced.  This is yet more indication that Freeman will succeed on his claims for declaratory relief and unfair and unlawful business practices, which strongly supports this application for temporary restraining order and preliminary injunction.

## B. Denying This Application For a Temporary Restraining Order Will Cause Freeman Irreparable Harm

The Court should grant a temporary restraining order and preliminary injunction because, in the absence of such injunctions, Freeman will suffer irreparable

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

12

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

harm, for which it will have no adequate remedy at law. Importantly, if GES obtains an injunction in Nevada barring Shores from working for Freeman, the parties will continue to litigate, but the case likely would not be resolved for a year or more, during which time Shores could not work for Freeman. GES will receive its desired benefit—stopping Shores from working for Freeman in California for 12 months—despite eventually losing on the merits. Meanwhile, Freeman would have already suffered the irreparable harm described below and would have no adequate remedy at law once the Court finds in its favor. Only a temporary restraining order and preliminary injunction can prevent the irreparable harm, which is discussed more fully below.

In particular, if GES is successful in Nevada, Freeman would effectively be forced to either: (1) pay Shores for twelve months despite Freeman performing no work or services during that time, or (2) directly or constructively terminate[4] Shores. (Declaration of Anytra Lowe-Texidor ¶7.) If Freeman directly or constructively terminated Shores, it would potentially be liable for a claim by Shores for wrongful termination in violation of California public policy. *See Silguero*, 187 Cal. App. 4th at 67 (authorizing a wrongful termination in violation of public policy claim for termination based on non-compete agreement that was invalid under California law).

In *Silguero*, the plaintiff's employer required her to sign a non-compete agreement and subsequently obtained new employment in California. *Id.* at 65. Approximately one month after Silguero began the new position, her employment was terminated due to her former employer's enforcement of her non-compete agreement. *Id.* The court found that terminating Silguero because of an invalid non-compete agreement gave rise to and supported her claim against her new employer for wrongful termination in violation of public policy because B&P Code § 16600

---

[4] Freeman's only other option would be to keep Shores as company employee, but refuse to pay him as he would be performing no work for Freeman. Ultimately, this action would force Shores to resign and Freeman's actions would likely be considered a constructive termination under California law. *See Turner v. Anheuser-Busch, Inc.* 7 Cal. 4th 1238, 1244 (1994) ("Constructive discharge occurs when the employer's conduct effectively forces an employee to resign.")

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

provides "a legislative declaration of fundamental public policy" against non-compete agreements.  *Id.*  Accordingly, the court found that terminating an employee based on a non-compete agreement that is illegal under California law is itself a violation of public policy.  *Id.*; *see Little v. Auto Stiegler, Inc.* 29 Cal. 4th 1064, 1076 (2003) (finding that "although employers have the power to terminate employees at will, they may not terminate an employee for a reason that is contrary to public policy").

*Silguero* establishes that forcing Freeman to directly or constructively terminate Shores based on the unlawful Non-Compete Agreements would cause Freeman irreparable harm.  Putting aside the potential enormous financial burden such an action would place on Freeman, such a claim would also irreparably harm Freeman by: (1) damaging Freeman's good will and public image, as such a claim would be placed in the public eye for all to see, (2) potentially reducing the talent pool that Freeman could attract for its future positions in California because prospective employees would assume Freeman violates California's public policies, (3) causing Freeman to divert precious resources and employee time to defend against such a claim, and (4) negatively impacting Freeman's business operations, including its ability to meet development goals and maintain office morale.  (Lowe-Texidor Decl. ¶9.)  These harms can only be prevented by granting the temporary restraining order and preliminary injunction against GES' attempts to enforce the Non-Compete Agreements in California.

If Freeman does not either directly or constructively terminate Shores, it would still be forced to pay Shores for twelve months despite Shores performing no work for Freeman during that time.  Putting aside that such an option is not realistically or financially viable for any company, this scenario would cause irreparable harm to Freeman because it would be forced to divert Freeman's resources from critical projects by forcing Freeman to not only pay Shores, but find, train, employ, and pay for a temporary replacement for Shores for twelve months.  (*Id.* ¶10)  Because Freeman has already gone through the hiring process, and determined Shores was the

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA  94111
+1 415 576 3000

best fit for the Senior Business Development Manager position (*see id.* ¶2), hiring a replacement would mean that Freeman was not able to hire the candidate of its choice for this position.  Freeman would therefore be, among other things: (1) less competitive in the market place as it would have a less than desirable candidate filling Shores' role for twelve months; (2) forced to put other critical development projects on hold; and (3) risking a negative impact on its client relationships and good will due to employee and client relationship manager turnover.  (*Id.* ¶10.)

Second, enforcing the Non-Compete Agreement would cause irreparable harm by denying Freeman the statutorily-protected right in California to hire the personnel of its choice for twelve months.  *See Application Grp.*, 61 Cal. App. 4th at 901. Before hiring Shores, Freeman expended significant resources to conduct an exhaustive search for the Senior Business Development Manager position and determined Shores was the best candidate for the position due to his experience and fit with Freeman.  (Lowe-Texidor Decl. ¶2.)  Forcing Freeman to actually or constructively terminate Shores would cause irreparable harm because Freeman would have to hire a less desirable candidate in California to fill Shores' role, and it would be cost-prohibitive to hire Shores back to this role when the Non-Compete Agreement expires.  (*Id.* ¶8.)

Third, Freeman has already expended substantial resources to implement Shores as a Senior Business Development Manager, and has assembled a team to work with Shores in the Company's Anaheim office.  (*Id.* ¶4.)  This team was assembled with Shores in mind, and forcing Freeman to replace Shores with a less desirable candidate would have a significant and irreparable impact on the Company's development goals and team dynamic.  Additionally, forcing Freeman to start from scratch by firing Shores, hiring a new Senior Business Development Manager, and training him/her, would cause substantial delay and a permanent setback in Freeman's development goals.  (*Id.*)  This is yet another irreparable injury that Freeman will face

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA  94111
+1 415 576 3000

1  if the Non-Compete Agreement is enforced while this litigation proceeds which can

2  only be prevented by granting the temporary restraining order.

3  　　　The requested temporary restraining order protecting Freeman's right to employ

4  Shores in California is essential because this is the only way to prevent the irreparable

5  harm described above.  Otherwise, by the time Freeman obtains a judgment

6  invalidating the Non-Compete Agreement, it would have already suffered irreparable

7  harm and would have no other remedy at law to repair such harm.  Accordingly, this

8  factor weighs strongly in favor of granting the temporary restraining order.

9  　　**C.**　　**The Balance of Equities Favors Freeman Because the Temporary**
   　　　　　**Restraining Order Will Not Harm GES**

10  　　　The balance of equities weighs strongly in favor of granting the temporary

11  restraining order and preliminary injunction because GES will suffer no legitimate harm

12  if the Non-Compete Agreement is not enforced.  GES' Nevada Complaint and Motion

13  for Injunction claims generally that it will be harmed by Shores' employment with

14  Freeman, but provides no specifics regarding any evidence that Shores has or intends to

15  take any action that would irreparably harm GES, much less that his employment for

16  Freeman will cause any irreparable harm to GES.  (*See* Shores Decl., Ex. C at 10-12.)

17  　　　GES has not alleged, either in the Complaint or Notice of Removal, that Shores

18  has or will misappropriate any GES trade secrets.[5]  (*Id.*; ECF No. 1.)  Even if GES had

19  made such an allegation, this would be immaterial because when courts are faced with

20  "the policy favoring employee mobility free of encumbering restriction and the policy

21  favoring protection of genuine trade secrets . . . employee mobility must prevail."

22  *Bayer Corp. v. Roche Molecular Sys.*, 72 F. Supp. 2d 1111, 1112 (N.D. Cal. 1999);

23  *see also Sacks*, 213 Cal. App. 3d at 633 ("Free competition prevails in the absence of a

24  trade secret customer list.").  GES cannot claim hardship because GES had not alleged

25  or identified evidence that Shores has or will share confidential information or trade

26

27  _____

28  [5] In fact, Shores returned all Company property in his possession to GES on or about January 11,
   2017, and has not retained any GES property or confidential information or trade secret customer
   list.  (Shores Decl. ¶12.)

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA  94111
+1 415 576 3000

1   secrets with Freeman, nor would any such claim override the superseding policy

2   favoring free mobility of employees.

3       Further, even assuming Shores' employment with Freeman is competitive to

4   GES, this is not a legitimate injury under California law to weigh against granting a

5   temporary restraining order and preliminary injunction, as California courts will not

6   enforce out-of-state non-competition restrictions that violate California law.  *See*

7   *Application Grp.*, 61 Cal. App. 4th at 901.  Additionally, the Ninth Circuit has found

8   that an employer cannot claim hardship based on non-enforcement of an illegal non-

9   compete.  *See Safelite Glass Corp. v. Crawford*, 25 Fed. Appx. 613, 614 (9th Cir.

10  2002) (affirming district court's order declining to restrain employee from working for

11  former employer's competitor in Arizona because the non-compete agreement was

12  overbroad).  As discussed in detail above, GES' Non-Compete Agreement is

13  unenforceable in California to the extent that it seeks to restrain Freeman from hiring

14  Shores in California.  GES will therefore not face any legitimate hardship if the Court

15  restrains GES from attempting to enforce the illegal Non-Compete Agreement.

16      Additionally, GES incorrectly states in the Nevada Complaint and Motion for

17  Injunction that a preliminary injunction stopping Shores from working for Freeman is

18  necessary to preserve the status quo, when in fact, the only way the status quo will be

19  preserved is for the Court to grant this request for temporary restraining order so that

20  Freeman can continue employing Shores in California, as is Freeman's statutory right,

21  during the pendency of this litigation.  *See Rodde v. Bonta*, 357 F.3d 988, 999 n.14

22  (9th Cir. 2004) (finding that balancing of interests favored plaintiff because it "sought

23  to preserve, rather than alter, the *status quo*" while the litigation progressed).   Given

24  that GES' purported harms do not match Freeman's irreparable harm that will result if

25  the temporary restraining order and preliminary injunction are not issued, and given

26  that the status quo can only be preserved by allowing Shores to remain employed by

27  Freeman, the balancing of equities weighs strongly in favor of Freeman.

28

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

17

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D. The Public Interest Favors Preserving the Status Quo While This Litigation Progresses

The public interest weighs in favor of enforcement of the Non-Compete Agreement because the California legislature, and courts interpreting the legislature, have repeatedly expressed the state's fundamental public policy against enforcement of out-of-state non-compete agreements.  In fact, the public interest factor weighs in favor of granting a preliminary injunction where the injunctive relief requested would "be consistent with state public policy."  *Colin ex rel. Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135, 1151 (C.D. Cal. 2000).  The public policy against non-compete agreements protects employees from anticompetitive conduct of out-of-state employers, but also protects employers from an out-of-state employer's attempt to circumvent California's statutory protections to stop employers from hiring talented personnel in California.  *See Application Grp.*, 61 Cal. App. 4th at 901.

Here, the public interest against permitting out-of-state employers from restraining California employers from hiring the personnel of their choice in California is especially pronounced because GES has not only taken affirmative steps to attempt to obtain a preliminary injunction in Nevada that would prevent Shores from working for Freeman in California, but GES even served its Complaint and Motion for Injunction on Shores in Freeman's offices in Anaheim.  GES' attempt to enforce the Non-Compete Agreement cannot be characterized as a mere attempt to enforce the Non-Compete Agreement with respect to Shores because GES took steps on Freeman's own property to thwart Freeman's statutorily protected right to hire Shores in California.  Accordingly, GES' threats and attempts to enforce the Non-Compete Agreement directly contravene California public policy, and the public interest factor therefore weighs in favor of granting the temporary restraining order. *See Colin ex rel. Colin*, 83 F. Supp. 2d at 1151.

Further, when a state has a "statutorily declared policy" and a temporary restraining order or preliminary injunction would follow that policy, "the public

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

18

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE

1   interest is served by preserving the status quo by means of a preliminary injunction."

2   *See M.R. v. Dreyfus*, 663 F.3d 1100, 1120 (9th Cir. 2011) (finding that the public

3   interest factor favored injunction based on Washington State statute).  Given that

4   Shores has worked for Freeman for one month, the status quo can only be preserved

5   by allowing Shores to continue working for Freeman while this litigation progresses.

6   Given that "the public interest is served by preserving the status quo," the this factor

7   weighs strongly in favor of granting the temporary restraining order.  *See id.*

8   **V.      CONCLUSION**

9           California's public policy against enforcement of non-competition agreements

10  would be meaningless if employers could circumvent California's laws by including

11  anticompetitive restraints in employment documents entered in other states, but then

12  enforce those provisions in California.  Freeman respectfully asks this Court to impose

13  a temporary restraining order and preliminary injunction to preserve the status quo—

14  Freeman's employment of Shores in California—as this litigation proceeds.  Freeman

15  will succeed on the merits because, although GES may attempt to enforce the Non-

16  Compete Agreement in any other state that does not have California's strong public

17  policy against non-compete agreements, it simply cannot enforce the Non-Compete

18  Agreement in California.  Moreover, the temporary restraining order and preliminary

19  injunction must be granted because Freeman would suffer irreparable harm if forced

20  to terminate Shores, and GES will not suffer any harm if the temporary restraining

21  order is granted.  Finally, the public interest favors preserving the status quo, here,

22  Freeman's employment of Shores in California.

23

24  Dated:  March 2, 2017                    Respectfully submitted,

25                                           BAKER & MCKENZIE LLP

26                                           By: */s/ Benjamin R. Buchwalter*
                                                 _____
27                                               Benjamin R. Buchwalter
                                                 Attorneys for Plaintiffs
28                                               FREEMAN EXPOSITIONS, INC.

Baker & McKenzie LLP
Two Embarcadero Center
Suite 1100
San Francisco, CA 94111
+1 415 576 3000

19

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR TEMPORARY RESTRAINING ORDER -- CASE NO. 8:17-CV-00364-CJC-JDE