Ron S. Brand, SBN 224809
JACKSON TIDUS
A Law Corporation
2030 Main Street, Suite 1200
Irvine, California 92614
Telephone: (949) 752-8585
Facsimile:   (949) 752-0597
Email:       rbrand@jacksontidus.law

Attorneys for Defendant
GLOBAL EXPERIENCE SPECIALISTS,
INC., a Nevada Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| FREEMAN EXPOSITIONS, INC., a Texas Corporation,<br><br>              Plaintiff,<br><br>vs.<br><br>GLOBAL EXPERIENCE SPECIALISTS, INC., a Nevada Corporation, and DOES 1-50,<br><br>              Defendants. | CASE NO.: 8:17-CV-00364-CJC-JDE<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER FOR DEFENDANT TO SHOW CAUSE RE PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>(Removed From Orange County Superior Court, Case No. 30-2017-00905422)<br><br>Complaint Filed: February 24, 2017 |

1

1345856.1

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TRO**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................... 5

II.  RELEVANT FACTUAL AND PROCEDURAL HISTORY ...................... 6

III. LEGAL STANDARD FOR INJUNCTIVE RELIEF ................................ 7

IV.  LEGAL ARGUMENT ............................................................................ 8

    A.  Freeman Will not Succeed on the Merits of this Action .................... 8

        1.  The Non-Competition Agreement's Forum-Selection
            Clause is Valid and Enforceable, and Therefore This
            Action Should be Dismissed, Stayed or Transferred ................ 8

        2.  Issuance of a Temporary Restraining Order Would
            Violate the Anti-Injunction Act ................................................. 13

        3.  This Court Should Decline Declaratory Relief Jurisdiction
            In Deference to the Nevada Action ............................................ 14

    B.  Denying the Ex Parte Application Will not Cause Freeman
       Irreparable Harm .............................................................................. 17

    C.  The Balance of the Hardships Weighs Against Granting
       Injunctive Relief .............................................................................. 19

    D.  Granting Injunctive Relief Will not Advance the Public Interest ...... 19

V.   CONCLUSION ...................................................................................... 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### <u>CASES</u>

4

*Advanced Bionics Corp. v. Medtronic, Inc.,*
5
    29 Cal. 4th 697 (2002)........................................................................ 13

6
*Alliance for Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ......................................................... 17

7
*Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers,*
8
    398 U.S. 281 (1970) ......................................................................... 14

9
*Bennett v. Medtronic, Inc.,*
    285 F.3d 801 (9th Cir. 2002) ........................................................... 14

10
*Brillhart v. Excess Ins. Co. of Am.,*
    316 U.S. 491 (1942) ............................................................ 14, 15, 16
11

12
*Caribbean Marine Services Co., Inc. v. Baldridge*,
    844 F.2d 668 (9th Cir. 1988) ........................................................... 17

13
*Chamberlain v. Allstate Ins. Co.,*
    931 F.2d 1361 (9th Cir. 1991) ......................................................... 16
14

15
*DeFeo v. Procter & Gamble Co.,*
    831 F. Supp. 776 (N.D. Cal. 1993).................................................. 15

16
*eAcceleration Corp. v. Trend Micro, Inc.,*
    408 F. Supp. 2d 1110 (W.D. Wash. 2006) ........................................ 7
17

18
*Flake v. Medline Indus., Inc.,*
    882 F. Supp. 947 (E.D. Cal. 1995) .................................................. 11

19
*Google, Inc. v. Microsoft Corp.,*
    415 F. Supp. 2d 1018 (N.D. Cal. 2005)...................................... 15, 16
20

21
*Harrah's Club v. Van Blitter*,
    902 F.2d 774 (9th Cir. 1990)............................................................. 7

22
*Harrison v. Synthes USA Sales, LLC,*
    2013 WL 1007662 (E.D. Cal. Mar. 13, 2013) ............................ 15, 16
23

24
*LeFebvre v. Syngenta Biotechnology, Inc.,*
    2008 WL 5245056 (N.D. Cal. Dec. 15, 2008........................................ 9

25
*Los Angeles Memorial Coliseum Comm'n v. NFL,*
    634 F.2d 1197 (9th Cir. 1980)......................................................... 17
26

27
*Mahoney v. Depuy Orthopaedics, Inc.,*
    2007 WL 3341389 (E.D. Cal. Nov. 8, 2007) ............................. 10, 11

28

1345856.1

**DEFENDANT'S OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO**

*Manchester v. Arista Records, Inc.,*
    1981 U.S. Dist. LEXIS 18642 (C.D. Cal. 1981) ................................................ 11

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
    858 F.2d 509 (9th Cir. 1988) ............................................................................. 12

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997) ........................................................................................... 7

*Multimin USA, Inc. v. Walco International, Inc.,*
    2006 WL 1046964 (E.D. Cal. Apr. 11, 2006) .................................................... 11

*Schmitt v. JD Edwards World Sols. Co.,*
    2001 WL 590039 (N.D. Cal. May 18, 2001) .................................................... 15

*Southwest Voter Registration Educ. Project,*
    344 F.3d at 917 ................................................................................................... 8

*Spradlin v. Lear Siegler Mgmt. Servs. Co.,*
    926 F.2d 865 (9th Cir. 1991) ............................................................................. 11

*Sw. Voter Registration Educ. Project v. Shelley,*
    344 F.3d 914 (9th Cir. 2003) ............................................................................... 7

*Swenson v. T-Mobile USA, Inc.,*
    415 F. Supp. 2d 1101 (S.D. Cal. 2006) ...................................................... passim

*Vendo Co. v. Lektro-Vend Corp.,*
    433 U.S. 623 (1977) .......................................................................................... 14

## **STATUTES**

28 U.S.C.A. § 2283 ................................................................................................ 13

Cal. Bus. & Prof. Code § 16600 ........................................................................ 8, 9

Cal. Bus. & Prof. Code § 17200 ........................................................................ 8, 9

1345856.1

**DEFENDANT'S OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO**

Defendant Global Experience Specialists, Inc., a Nevada Corporation (*"GES"*), hereby submits this Memorandum of Points and Authorities in opposition to the Ex Parte Application for Temporary Restraining Order and Order for Defendant to Show Cause Why Preliminary Injunction Should Not Issue Pending Trial in this Action (the "*Ex Parte Application*") filed by Plaintiff Freeman Expositions, Inc., a Texas Corporation (*"Freeman"*).

## I.    INTRODUCTION

On March 6, 2017, the District Court in Clark County, Nevada issued a preliminary injunction (the "*Nevada Preliminary Injunction*") against Landon Shores ("*Shores*") prohibiting Shores from working as a sales manager for Freeman through the end of 2017 due to his breach of the Confidentiality and Non-Competition Agreement which Shores voluntarily entered into with GES as a condition of his employment with GES (the "*Non-Competition Agreement*").

Through its Ex Parte Application, Freeman improperly seeks a temporary restraining order precluding GES from seeking to enforce the Nevada Preliminary Injunction, in Nevada or anywhere else.  Freeman's request for injunctive relief should be summarily denied because Freeman cannot show a strong likelihood that it will succeed on the merits of this action since (1) the Non-Competition Agreement's forum-selection clause (which states that the federal or state courts of Nevada constitute the exclusive proper forum for resolution of any dispute arising out of or in connection with the Non-Competition Agreement) is valid and should be enforced; (2) issuance of a temporary restraining order would violate the Anti-Injunction Act; and (3) this Court should dismiss this action in deference to the state court proceeding currently pending in Nevada.

Freeman's request for injunctive relief should also be denied because Freeman will not suffer irreparable injury if no injunctive relief is granted, the balance of the hardships weighs against granting injunctive relief to Freeman, and granting injunctive relief would not advance the public interest.

1345856.1

## II.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

GES hired Shores in June of 2013 as a sales associate in Nevada. (Declaration of Landon Shores filed by Freeman in support of the Ex Parte Application *("Shores Dec."*), ¶2.)  At that time he was a resident of Nevada. (Shores Dec., ¶2.)  On or about September 12, 2016, Shores executed the Non-Competition Agreement.  (Shores Dec., ¶3, Exhibit B.)  Section 7.6 of the Non-Competition Agreement provides as follows:

> This Agreement shall be governed by the laws of the State of Nevada.  The parties acknowledge that the federal or state courts of Nevada constitute the exclusive proper forum for resolution of any dispute arising out of or in connection with this Agreement.  The parties consent to the exercise of jurisdiction over them by such courts.

On January 6, 2017, Shores resigned from his employment with GES. (Shores Dec., ¶5.)

Shores lived in Nevada until January 23, 2017, at which time he moved to California.  (Shores Dec., ¶17.)

On February 2, 2017, Shores began working for Freeman in its Anaheim office.  (Shores Dec., ¶18.)

On February 7, 2017, GES served Shores with a Complaint and Motion for Preliminary Injunction that it filed in the District Court in Clark County, Nevada (the "*Nevada Action*").  (Shores Dec., ¶20, Exhibit C.)

On February 24, 2017, Freeman filed its Complaint in the Superior Court of the State of California, County of Orange.  On February 28, 2017, Freeman filed an Application for Temporary Restraining Order and Order to Show Cause in the Orange County Superior Court.  On that same day GES removed this action to this Court, therefore taking the state court hearing off calendar.

On March 6, 2017, the court in the Nevada Action held a hearing on GES' request for a preliminary injunction.  At the hearing Shores' attorney asserted that Freeman had filed this action to enjoin enforcement of the Non-Competition

1345856.1

Agreement and asked the court in the Nevada Action to delay its ruling for one week to allow this Court to rule on the Ex Parte Application.  (Declaration of Jon Massimino in support of the opposition to the Ex Parte Application ("***Massimino Dec.***"), ¶8, Exhibit C.)  The court in the Nevada Action rejected the request of Shores' attorney, and issued the Nevada Preliminary Injunction.     (Massimino Dec., ¶8, Exhibit C.)

The Nevada Preliminary Injunction prohibits Shores from working as a sales manager for Freeman through then end of 2017.[1]  (*Id*.)  However, the Nevada Preliminary Injunction does <u>not</u> prevent Shores from working for Freeman; it only prevents Shores from working for Freeman to the extent it involves the work Shores performed for GES while he was employed by GES.  (*Id.*)

## III.  <u>LEGAL STANDARD FOR INJUNCTIVE RELIEF</u>

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997).  To obtain injunctive relief, the moving party must show: (1) a likelihood of probable success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in the moving party's favor.  See *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003).  The court should also examine whether the public interest favors the movant.  See *eAcceleration Corp. v. Trend Micro, Inc.,* 408 F. Supp. 2d 1110, 1113 (W.D. Wash. 2006).

///

---

[1] If the Nevada Preliminary Injunction ultimately becomes a judgment, said judgment would be entitled to "full faith and credit" in California courts.   U.S. Const. art. IV, § 1.   The Ninth Circuit has recognized "[i]t has long been established that a final judgment rendered under the laws of one state must be enforced by a sister state under the Full Faith and Credit Clause, <u>even though the underlying action may be against the public policy of the state in which enforcement is sought</u>."  *Harrah's Club v. Van Blitter*, 902 F.2d 774, 777 (9th Cir. 1990) (footnote omitted and emphasis added).

The test for injunctive relief in the Ninth Circuit has been articulated, in what is referred to as the "traditional test," as a consideration of four factors: (1) whether a strong likelihood exists that the moving party will succeed on the merits of the case; (2) whether the moving party will suffer irreparable injury if no injunctive relief is granted; (3) whether a balance of the hardships favors granting injunctive relief to the moving party; and (4) whether granting injunctive relief would advance the public interest. *Southwest Voter Registration Educ. Project*, 344 F.3d at 917–918.

An analysis of the aforementioned factors compels the conclusion that Freeman is not entitled to any type of injunctive relief, including a temporary restraining order.

## IV.   LEGAL ARGUMENT

### A.   Freeman Will not Succeed on the Merits of this Action

1.   The Non-Competition Agreement's Forum-Selection Clause is Valid and Enforceable, and Therefore This Action Should be Dismissed, Stayed or Transferred

Freeman cannot show a strong likelihood that it will succeed on the merits because this action should be dismissed, stayed or transferred based on the forum-selection clause contained in the Non-Competition Agreement.  (At the appropriate time, GES will file a motion to dismiss, stay or transfer this action.)

Freeman's request for a temporary restraining order specifically involves the Non-Competition Agreement and rests entirely on its argument that the Non-Competition Agreement violates California public policy, as embodied in California Business and Professions Code section 16600 ("*Section 16600*") and California Business and Professions Code section 17200 ("*Section 17200*").[2] Freeman asserts that it will prevail on its claim for declaratory relief because (1) the Non-Competition Agreement cannot restrain employees from engaging in a

---

[2] In its Ex Parte Application, Freeman states that it is not seeking a temporary restraining order based on its claim for intentional interference with contractual relations.

**DEFENDANT'S OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO**

lawful profession in California under Section 16600 and (2) the Non-Competition Agreement cannot be applied to Freeman because it violates the "statutory right" of employers to hire the personnel of their choice in California under Section 17200.

Although Freeman invokes the Non-Competition Agreement, it completely ignores the forum-selection clause contained therein.   The Non-Competition Agreement, which is at the heart of the Ex Parte Application, specifically provides that the federal or state courts of Nevada constitute the exclusive proper forum for resolution of any dispute arising out of or in connection with the Non-Competition Agreement.   (Shores Dec., ¶3, Exhibit B.)   Accordingly, Freeman should have brought this action in a federal or state court in Nevada, and <u>not</u> in a federal or state court in California.

At the outset, Freeman may argue that it is not a party to the Non-Competition Agreement, and therefore the forum-selection clause is inapplicable to this action.  Such an argument would be meritless.  Freeman is a party interested under the Non-Competition Agreement since it is attempting to pursue a declaratory judgment action against GES based on the Non-Competition Agreement, and therefore it should be bound by the forum-selection clause.  See, e.g., *LeFebvre v. Syngenta Biotechnology, Inc.,* No. C 08-02732 JW, 2008 WL 5245056 (N.D. Cal. Dec. 15, 2008, *3-*5.

Moreover, Freeman cannot argue that the Non-Competition Agreement is void and unenforceable and seek a temporary restraining order essentially on behalf of Shores, and at the same time distance itself from the forum-selection clause and argue that the forum-selection clause is inapplicable.  Freeman cannot have its cake and eat it too; if it is going to argue that the Non-Competition Agreement is void and unenforceable and seek a temporary restraining order essentially on behalf of Shores, then it is bound by the forum-selection clause contained in the Non-Competition Agreement.

1345856.1

**DEFENDANT'S OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO**

It is very curious that Shores is not a party to this action. Shores is a party to the Non-Competition Agreement and has the most to gain or lose should this Court enter a temporary restraining order or refuse to enter a temporary restraining order. GES suspects that Freeman filed this action without Shores in an improper attempt to circumvent the forum-selection clause contained in the Non-Competition Agreement. This Court should not allow Shores to forum shop indirectly through this action and avoid compliance with the Nevada Preliminary Injunction.

A forum-selection clause determines where the case will be heard; it is separate and distinct from which law will apply. *Mahoney v. Depuy Orthopaedics, Inc.,* No. CIVF 07-1321 AWI SMS, 2007 WL 3341389 (E.D. Cal. Nov. 8, 2007), *8. Forum-selection clauses "should be respected as the expressed intent of the parties." *Swenson v. T-Mobile USA, Inc.,* 415 F. Supp. 2d 1101, 1104 (S.D. Cal. 2006). They are presumptively valid and are enforceable unless the party challenging enforcement shows the clause is unreasonable under the circumstances. *Id.* A forum-selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence or overwhelming bargaining power; (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived" of his day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Id.*

Freeman has not provided any evidence to show that the forum-selection clause was incorporated into the Non-Competition Agreement as a result of fraud, undue influence or overwhelming bargaining power. Likewise, Freeman has not provided any evidence that it will be gravely difficult and inconvenient for Freeman and Shores to litigate their claims in Nevada. Freeman is a large multi-national corporation with 90 offices worldwide, including an office in Las Vegas, Nevada. (Massimino Dec., ¶4.) Up until January 23, 2017, Shores resided in Nevada. (Shores Dec., ¶17.) Shores likely has friends and family who currently

**DEFENDANT'S OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO**

reside in Nevada.  Furthermore, Las Vegas (where the Nevada Action is pending) is not so geographically distant from Shores' residence in Anaheim, California to make it gravely difficult or inconvenient for him to litigate in Las Vegas.

Freeman may argue that enforcing the forum-selection clause would violate California's strong public policy against non-competition agreements.  Such an argument would be meritless, and has been rejected by numerous California district courts.  These courts have consistently held that enforcement of a forum-selection clause itself does not contravene California's strong public policy against non-competition agreements.  *Swenson,* 415 F. Supp. 2d at 1104–05; *Mahoney,* 2007 WL 3341389 at *8; *Multimin USA, Inc. v. Walco International, Inc.,* No. CV F 06-0226 AWI SMS, 2006 WL 1046964 (E.D. Cal. Apr. 11, 2006), *17-*18; *Manchester v. Arista Records, Inc.,* 1981 U.S. Dist. LEXIS 18642 (C.D. Cal. 1981), *15-*17.

Furthermore, there exists a strong policy in the Ninth Circuit favoring upholding forum-selection clauses, even where those clauses apply a non-California forum or law to a California party.  See *Flake v. Medline Indus., Inc.,* 882 F. Supp. 947, 949–50 (E.D. Cal. 1995) (enforcing Illinois forum-selection clause against California employee); see also *Spradlin v. Lear Siegler Mgmt. Servs. Co.,* 926 F.2d 865, 867 (9th Cir. 1991) (enforcing Saudi Arabia forum-selection clause because employee failed to come forward "with anything beyond the most general and conclusory allegations" of fraud and overreaching regarding employment contract).

Importantly, there is no indication that Nevada courts will not or cannot entertain Freeman's or Shores' choice of law arguments, or that they cannot apply California law if it is determined that California law governs the Non-Competition Agreement.  Any notion that Nevada courts will not safeguard Freeman's or Shores' rights is "speculative" and reflects a "provincial attitude" toward Nevada courts.  See *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 515 (9th Cir.

1988).  As articulated in numerous decisions, including in *Swenson*, Freeman and Shores can make any choice-of-law arguments they wish, so long as they bring these arguments in a federal or state court in Nevada (which Shores appears to have done in the Nevada Action).

The *Swenson* case is instructive and directly on point.  In that case, T-Mobile's COO, Swenson (a California resident), signed employment agreements with T-Mobile that included one year non-compete provisions, a choice-of-law provision in favor of Washington law, and a forum-selection clause in favor of the state or federal courts of Washington.  *Swenson,* 415 F. Supp. 2d at 1102–03. When Swenson resigned to join a California competitor, T-Mobile filed suit in Washington state court to enforce the covenants. Swenson then filed a declaratory relief action against T-Mobile in California state court, which T-Mobile removed to federal court.  Thereafter, the Washington state court relied upon Washington law in entering injunctions against Swenson.  In the California federal action, Swenson filed a summary judgment motion, and T-Mobile filed a motion to dismiss, stay or transfer the action to a Washington federal court.  *Id.* at 1103.

The California district court found the parties' forum-selection clause enforceable and granted T-Mobile's motion to dismiss.  The court noted that "forum-selection clauses should be respected as the expressed intent of the parties" and "are prima facie valid and enforceable unless the party challenging enforcement shows the clause is unreasonable under the circumstances." *Id.* at 1104 (quotations and citations omitted).  The court specifically rejected Swenson's argument that the forum-selection clause contravened California's strong public policy against noncompetition agreements.  *Id.* Noting the distinction between forum-selection clauses and choice-of-law clauses, the court stated that "Swenson was free to, and in fact, did argue for the application of California law" in the Washington forum.  *Id.*  The court held that "[e]nforcement of the forum-selection clause . . . does not contravene a California policy as to forum." *Id* at 1105.

1345856.1

At the end of the day, Freeman simply will not be able to meet its heavy burden of showing that enforcement of the forum-selection clause would violate a strong California public policy as to forum or deprive it and Shores of their day in court. It is abundantly clear that Freeman will not succeed on the merits, and therefore this Court should deny the Ex Parte Application.

> 2.    Issuance of a Temporary Restraining Order Would Violate the Anti-Injunction Act

Freeman cannot show a strong likelihood that it will succeed on the merits because the Anti-Injunction Act (the *"Act"*) prohibits this Court from issuing the temporary restraining order requested by Freeman.  While Freeman claims that it is not requesting this Court restrain any court from taking any action (presumably including the court in the Nevada Action), the type of relief it is requesting clearly shows that it is indeed seeking an order from this Court restraining the court in the Nevada Action from enforcing the Nevada Preliminary Injunction.

Freeman specifically requests that this Court issue a temporary restraining order preventing GES from seeking to enforce its Non-Competition Agreement in Nevada.  While Freeman disingenuously adds the qualification "to the extent that" such enforcement would prevent Freeman from hiring Shores, Freeman is no doubt requesting that this Court enjoin the Nevada Action and render the Nevada Preliminary Injunction null and void.

If this Court issues the temporary restraining order as requested by Freeman, such an order would violate the Act.  The Act provides that, with  a  few exceptions that do not apply here, "a court of the United States may not grant an injunction to stay proceedings in a State Court. . . ." 28 U.S.C.A. § 2283.[3]    "The

---

[3] Similarly, the principles of judicial restraint and comity preclude California state courts from enjoining parallel proceedings in another state absent "exceptional circumstances."  See *Advanced Bionics Corp. v. Medtronic, Inc.,* 29 Cal. 4th 697, 707-708, 59 P.3d 231 (2002) (error to enjoin Minnesota employer from proceeding in Minnesota action to enforce noncompetition agreement even though California law bars such agreements and California suit to invalidate the agreement filed first).

1345856.1

Supreme Court has confirmed what is facially apparent; the breadth of the Act's prohibition is broad." *Bennett v. Medtronic, Inc.,* 285 F.3d 801, 805 (9th Cir. 2002) (quoting *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers,* 398 U.S. 281, 286–87, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970).  "Any doubts as to the proprietary of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line R. Co.,* 398 U.S. at 297. The Act creates a presumption in favor of permitting parallel actions in state and federal court.  *Id.* at 295 (holding that "neither court was free to prevent either party from simultaneously pursuing both claims" in state and federal court); see *Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 642, 97 S. Ct. 2881, 53 L. Ed. 2d 1009 (1977).

Should this Court issue the temporary restraining order as requested by Freeman, it would essentially enjoin the Nevada Action, prevent the court in the Nevada Action from enforcing the Nevada Preliminary Injunction, and render the Nevada Preliminary Injunction null and void, all of which would constitute a violation of the Act.  Any doubts as to the applicability of the Act should be resolved in favor of permitting the Nevada Action to proceed in an orderly fashion to finally determine the controversy between Shores and GES.  Accordingly, this Court should deny the Ex Parte Application.

3.   This Court Should Decline Declaratory Relief Jurisdiction In Deference to the Nevada Action

Freeman cannot show a strong likelihood that it will succeed on the merits because this Court should decline declaratory relief jurisdiction in deference to the Nevada Action and the Nevada Preliminary Injunction.  In *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942), the Supreme Court considered the power of federal courts to grant declaratory relief when parallel suits are proceeding in state court, holding that "it would be uneconomical

14

as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the parties." *Brillhart,* 316 U.S. at 495.

The Supreme Court in *Brillhart* articulated three factors that district courts should consider when examining the propriety of entertaining a declaratory judgment action, such as this action: (1) avoiding needless determination of state law issues; (2) discouraging forum shopping; and (3) avoiding duplicative litigation. *Id.*

Several California district courts have declined to issue declarations on the enforceability of employment covenants not to compete where cases involving the same covenants were already filed in state courts. *Swenson*, 415 F. Supp. 2d at 1106; *Google, Inc. v. Microsoft Corp.*, 415 F. Supp. 2d 1018, 1022 (N.D. Cal. 2005); *Harrison v. Synthes USA Sales, LLC*, No. 2:12-CV-02704-GEB-AC, 2013 WL 1007662 (E.D. Cal. Mar. 13, 2013); *Schmitt v. JD Edwards World Sols. Co.*, No. C 01-1009 VRW, 2001 WL 590039 (N.D. Cal. May 18, 2001); *DeFeo v. Procter & Gamble Co.*, 831 F. Supp. 776, 778-79 (N.D. Cal. 1993).

For example, the California district court in *Swenson* dismissed the declaratory judgment action because it determined that "under *Brillhart,* [it] would be needlessly determining issues of state law, would be helping Swenson avoid state court proceedings, and would be furthering duplicative litigation if it heard the merits of this case." 415 F. Supp. 2d at 1106.

In *Google, Inc. v. Microsoft Corp.,* 415 F. Supp. 2d 1018 (N.D. Cal. 2005), an executive entered into an employment agreement with Microsoft containing a covenant not to compete, a choice-of-law provision in favor of Washington law, and a forum-selection clause in favor of Washington courts. On the day the Microsoft executive resigned in order to join Google, Microsoft filed an action in Washington state court against the employee and Google. Three days later, Google and the employee filed a declaratory relief action in California state court,

1345856.1

1    which Microsoft removed to federal court.  Thereafter, the Washington state court

2    entered injunctions against the former employee and Google.  Microsoft filed a

3    motion to dismiss, stay or transfer the California federal action in favor of the first-

4    filed Washington state action.  Noting that "when a party requests declaratory

5    relief in federal court and a suit is pending in state court presenting the same state

6    law issues, there exists a presumption that the entire suit should be heard in state

7    court" (quoting *Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1366-67 (9th Cir.

8    1991) (emphasis added)), the court stayed the California action pending the

9    outcome of the Washington action.  *Id.* at 1020-21.  As in *Swenson*, the *Google,*

10   *Inc.* court found that the choice-of-law arguments advanced by the employee and

11   Google could be made in the Washington state action.  *Id.* at 1022.

12       In *Harrison*, the California district court, relying on the three factors

13   enunciated in *Brillhart,* dismissed a declaratory judgment action seeking to declare

14   noncompetition and nonsolicitation provisions in two agreements unlawful

15   restraints of trade under California law in deference to a later-filed Pennsylvania

16   state court action involving alleged breaches of the same provisions and a forum-

17   selection clause selecting Pennsylvania as the forum.  *Harrison*, 2013 WL 1007662

18   at *2-*4.

19       The Nevada Action presents the same issues as this action: the enforceability

20   of the Non-Competition Agreement under state law.  By issuing injunctive relief,

21   this Court would be needlessly determining issues of state law, would be helping

22   Shores avoid the Nevada Preliminary Injunction, and would be furthering

23   duplicative litigation. Therefore, it would be uneconomical and vexatious for this

24   Court to issue injunctive relief.

25   ///

26   ///

27   ///

28   ///

**DEFENDANT'S OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.   Denying the Ex Parte Application Will not Cause Freeman Irreparable Harm

A temporary restraining order may not be granted based on a "possibility" of irreparable harm.  This is because injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  A plaintiff must demonstrate "immediate threatened harm."  *Caribbean Marine Services Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).  A plaintiff must also demonstrate "potential harm which cannot be redressed by a legal or an equitable remedy following a trial."  *Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980).

Here, Freeman argues that it will suffer irreparable harm if this Court does not issue a temporary restraining order because (1) it may directly or constructively terminate Shores thereby "potentially" exposing it to liability for a claim by Shores for wrongful termination in violation of California public policy; (2) if it does not directly or constructively terminate Shores, it would be forced to pay Shores for twelve months despite Shores performing no work for Freeman during that time; (3) it would be denied of its "statutorily-protected right" in California to hire the personnel of its choice; and (4) it already expended substantial resources to implement Shores as an employee and has assembled a team to work with Shores in its Anaheim office.

Freeman has not demonstrated immediate threatened harm.   First, the Nevada Preliminary Injunction does not prevent Shores from working for Freeman; it only prevent Shores from working for Freeman to the extent it involves the work Shores performed for GES while he was employed by GES.  (Massimino Dec., ¶8, Exhibit C.)

Second, Freeman does not state whether it actually would terminate Shores if this Court does not issue a temporary restraining order; it simply articulates

**DEFENDANT'S OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO**

1    various options it purportedly has should this Court refuse to issue a temporary
2    restraining order.  Third, Freeman concedes that terminating Shores would only
3    "potentially" expose it to liability for a claim by Shores for wrongful termination in
4    violation of California public policy.  Interestingly, nowhere in the declaration
5    Shores submitted in support of the Ex Parte Application does he state that he will
6    sue Freeman if this Court does not issue a temporary restraining order and if
7    Freeman terminates Shores.

8         Fourth, Freeman provides no evidence to support its contention that it would
9    be "forced" to pay Shores for twelve months despite Shores performing no work
10   for Freeman during that time.  For example, Freeman does not claim that it
11   employed Shores pursuant to an employment contract for a specified term and that
12   Shores can only be terminated "for cause." Freeman has not even produced any
13   type of employment contract between Freeman  and Shores in support of the Ex
14   Parte Application.  More importantly, the Nevada Preliminary Injunction does
15   allow Shores to work for Freeman, just not the type of work Shores performed for
16   GES, so Freeman's argument that it would be "forced" to pay Shores for twelve
17   months despite Shores performing no work for Freeman is disingenuous, at best.

18        Moreover, Freeman has not demonstrated potential harm which cannot be
19   redressed by a legal or an equitable remedy following the trial of this action.  Even
20   assuming enforcing the Non-Competition Agreement during the pendency of this
21   action and before a final judgment is issued would somehow deny Freeman its
22   "statutorily-protected right" in California to hire Shores and would somehow cause
23   substantial delay and a permanent set back in Freeman's development goals, such
24   potential harm can be easily redressed by a legal or an equitable remedy following
25   trial.

26        In fact, Freeman's claim for intentional interference with contractual
27   relations (which is not part of its request for a temporary restraining order)
28   specifically seeks damages and equitable relief based on GES attempting to

**DEFENDANT'S OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO**

enforce the Non-Competition Agreement.  Freeman alleges in its Complaint that GES deliberately intended to interfere with, disrupt and prevent the performance of the alleged employment agreement between Freeman and Shores by attempting to enforce the Non-Competition Agreement, and that it has been damaged in an amount which will be proven at trial.   Clearly, Freeman's potential harm can be easily redressed by a legal or equitable remedy following the trial of this action.

**C.    The Balance of the Hardships Weighs Against Granting Injunctive Relief**

GES would suffer substantial hardship if this Court were to issue the temporary restraining order requested by Freeman. Specifically, the temporary restraining order would not only nullify the Nevada Preliminary Injunction, but it would nullify the valid and enforceable forum-selection clause contained in the Non-Competition Agreement.  Moreover, if the Court were to issue a temporary restraining order, it would create a multiplicity of actions and permit potentially inconsistent rulings. Accordingly, this Court should deny the Ex Parte Application.

**D.    Granting Injunctive Relief Will not Advance the Public Interest**

The public interest does not favor the issuance of injunctive relief sought by Freeman, which would seriously harm GES.  As discussed above, public policy in California and the Ninth Circuit strongly favors judicial restraint when it comes to actions pending in other forums, as well as favoring enforcement of forum-selection clauses. No legitimate public interest would be served by granting the injunctive relief Freeman seeks; rather, issuance of such an injunction would harm the public's interest in promoting judicial economy, preventing duplicity of litigation, and ensuring that federal courts do not enjoin state court proceedings. Accordingly, this Court should deny the Ex Parte Application.

///

///

///

1345856.1

**DEFENDANT'S OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO**

1

## V.     **CONCLUSION**

2

        Based on the above, GES respectfully requests that this Court deny the Ex

3

Parte Application, and grant GES such other and further relief as it deems just and

4

appropriate.

5

6

DATED:  March 8, 2017              JACKSON TIDUS

7                                                 A Law Corporation

8

9

10                                       By: /s/Ron S. Brand
                                             Ron S. Brand
11                                           Attorneys for Defendant
                                             GLOBAL EXPERIENCE SPECIALISTS,
12                                           INC., a Nevada Corporation

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1345856.1

**DEFENDANT'S OPPOSITION TO PLAINTIFFS EX PARTE APPLICATION FOR TRO**