# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| FREEMAN EXPOSITIONS, INC.,<br><br>      Plaintiff,<br><br>  v.<br><br>GLOBAL EXPERIENCE SPECIALISTS, INC.,<br><br>      Defendant. | Case No.: SACV 17-00364-CJC(JDEx)<br><br><br>ORDER DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDERING PLAINTIFF TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT BY MARCH 27, 2017 |

## I. INTRODUCTION

On February 24, 2017, Plaintiff Freeman Expositions, Inc. ("Freeman"), filed this case in Orange County Superior Court against Defendant Global Experience Specialists, Inc. ("GES"), alleging four causes of action arising out of GES' efforts to enforce a

noncompete clause against one of its former employees who was subsequently employed by Freeman.  (Dkt. 1 Ex. B [Complaint, hereinafter "Compl."].)  GES removed the case to this Court on February 28, 2017.  (Dkt. 1.)  On March 2, 2017, Freeman filed an *ex parte* application for a temporary restraining order.  (Dkt. 9.)  For the following reasons, the application is DENIED.  Freeman is ORDERED to file a motion for partial summary judgment by **March 27, 2017**.

## II.  BACKGROUND

Freeman is "a leading provider of integrated services for experiential marketing, specializing in event marketing and management," and is a Texas corporation.  (Compl. ¶ 1.)  GES is a Nevada corporation and "is a third party marketing company that provides technology, strategy, and logistics for exhibitions, exhibits, and events."  (*Id.* ¶ 2.)

Mr. Landon Shores, then a resident of Nevada, was hired by GES in June 2013 as a sales trainee and promoted to a sales associate on September 27, 2013.  (*Id.* ¶ 9.)  At the time of that promotion, Mr. Shores signed a confidentiality and noncompete agreement.  (*Id.* ¶ 10; *see also* Dkt. 9 Ex. A.)  The agreement prevents Mr. Shores from competing, directly or indirectly, with GES "by performing services . . . that are competitive with and/or similar to [his] services performed for [GES] during the last eighteen (18) months of [his] employment" for twelve months following his separation from GES anywhere in the United States.  (Compl. ¶ 11; Dkt. 9 Ex. A ¶ 1.6(A).)  The 2013 agreement singled out Freeman as an entity encompassed by the restriction.  (Dkt. 9 Ex. A ¶ 1.6(A).)

In 2016, Mr. Shores was promoted by GES to be a Sales Manager.  (Dkt. 15 ¶ 6.)  On September 12, 2016, Mr. Shores signed a second, superseding confidentiality and noncompete agreement in light of his promotion.  (Dkt. 9 Ex. B.)  The noncompete provision was substantially equivalent to the prior one, lasting twelve months from the

time of his separation from GES and reaching throughout the United States, though it did not explicitly mention Freeman and it shortened the eighteen month period regarding the services performed for GES to twelve months.  (*Id.* ¶ 1.6(A).)  The agreement also prohibits Mr. Sales from contacting, soliciting, or communicating with any GES customers or potential customers for the twelve months following his separation from GES.  (*Id.* ¶ 1.6(B); *see also id.* Ex. A ¶ 1.6(B).)  Finally, the agreement contains a forum selection clause specifying Nevada state or federal court as the exclusive forum and a clause stating that the agreement shall be governed by Nevada law.  (*Id.* Ex. B ¶ 7.6; *see also id.* Ex. A ¶ 7.6.)

On January 6, 2017, Mr. Shores verbally provided his resignation and two week notice to Tom Page, GES' Director of Sales.  (Compl. ¶ 17.)  Mr. Shores informed Mr. Page that he was moving to California to work for Freeman as he had signed and accepted Freeman's offer of a Senior Business Development Manager position in Freeman's Anaheim, California office.  (*Id.*)

The following day, Saturday, January 7, 2017, Daniel Higgins, the Regional Vice President of Sales for GES and a resident of California, called Mr. Shores.  (*Id.* ¶ 18.)  When Mr. Shores informed him of his plan to move to California and work for Freeman, Mr. Higgins allegedly threatened Mr. Shores, telling him that he hoped Mr. Shores had enough money saved to sit around and do nothing for a year, that he better not sign a lease in California because GES was going to sue him and make sure he did not work for Freeman, and that he was going to be broke due to thousands of dollars of legal fees.  (*Id.* ¶ 18.)  When Mr. Shores informed Mr. Higgins that he had already signed an employment agreement with Freeman, Mr. Higgens stated that he should break the agreement or face being broke.  (*Id.* ¶ 19.)

//

Later that evening, Jeff Quade, Chief Sales Officer for GES, called Mr. Shores. (*Id.* ¶ 20.)  When Mr. Shores informed him that he was moving to California to work for Freeman, Mr. Quade asked if the decision was final.  (*Id.* ¶ 20.)  When Mr. Shores confirmed that it was, Mr. Quade also threatened Mr. Shores with lawsuits.  (*Id.* ¶ 20 ("You are going to have no income for a year.  Do you have the funds to pay for that? . . . We are going to sue you personally, so it is going to be very expensive for you.").)  At the end of the conversation, Mr. Quade said, "Do you really want to go down this road?  I see two different paths.  One path is to remain with GES and the other path is to go with Freeman and get sued and go broke.  It is a lot easier to get out of an offer letter than a non-compete agreement."  (*Id.* ¶ 21.)

On Monday, January 9, 2017, Mr. Shores returned to GES to honor his two week notice, but he was escorted from the office in a hostile manner by Mr. Page; he believes this was at the direction of Mr. Higgins and Mr. Quade.  (*Id.* ¶ 22.)  As he was being walked out, Mr. Page threatened him, saying "If you think a shit storm is going on now, its just started."  (*Id.* ¶ 23.)  Mr. Page also demanded a phone number and email address from Mr. Shores since GES was going to file a restraining order.  (*Id.* ¶ 23.)  Mr. Shores had a friend and colleague return all of GES' property and confidential information in his possession and control to GES on January 11, 2017.  (*Id.* ¶ 24.)

Mr. Shores moved to Anaheim on January 23, 2017, and began working for Freeman in its Anaheim office on February 2, 2017.  (*Id.* ¶¶ 26–27.)  Mr. Shores estimates that 80–90% of his sales with GES were for events in Las Vegas, Nevada, and the vast majority of his clients while working for GES were in Las Vegas, Nevada.  (Dkt. 9-5 [Declaration of Landon Shores, hereinafter "Shores Decl."] ¶ 4.)  His work for Freeman "has largely required [him to] start the process of generating sales and leads from square one. . . . [He is] not using any confidential information of GES . . . with Freeman and there is no overlap of clients."  (*Id.* ¶ 15; *see also id.* ¶ 16 ("I have not asked

a single client or show organizer that I had secured for GES to stop using GES'[] services and start using those of Freeman."); *id.* ¶ 19 ("GES' threats have made performance of obligations under my employment agreement with Freeman extremely difficult and expensive.  I have not serviced particular clients nor have I solicited or reached out to a vast number of available and potential clients in California, out of fear that they might potentially be GES clients.").)

On February 7, 2017, GES served Mr. Shores in the lobby of Freeman's Anaheim office with a complaint and motion for preliminary injunction that it had filed in Nevada state court.  (Compl. ¶ 28.)  The complaint seeks, *inter alia*, an injunction enjoining Mr. Shores' "employment with Freeman in a competitive capacity," (Dkt. 14 Ex. A at Prayer for Relief No. 1);[1] the motion for preliminary injunction seeks to enjoin Mr. Shores from (1) "soliciting or doing business with any clients of GES" and (2) "performing any work which would be in competition with GES," (Dkt. 9 Ex. C at 1).  The preliminary injunction was set for hearing on March 6, 2017.  (*Id.* at 2.)

Freeman filed this case against GES on February 24, 2017, in Orange County Superior Court.  (Compl.)  Freeman asserted four causes of action: (1) declaratory judgment that the noncompete agreement is invalid to the extent it applies or seeks to apply in California or to a California employers' ability to hire employees of its choosing, (*id.* ¶¶ 35–46); (2) intentional interference with contractual relations, (*id.* ¶¶ 47–58); (3) unfair business practices under California Business & Professions Code § 17200, (*id.* ¶¶ 59–66); and (4) unlawful business practices under California Business & Professions Code § 17200, (*id.* ¶¶ 67–75).  On February 28, 2017, Freeman filed an *ex parte* application in Orange County Superior Court to enjoin GES from enforcing the

---

[1] GES' Request for Judicial Notice, (Dkt. 15), is GRANTED.  GES' complaint in the Nevada case and the minutes of the Nevada court's hearing are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201.

noncompete agreement in Nevada or elsewhere to the extent it would prevent Mr. Shores'
employment for Freeman in California.  (Dkt. 1 Ex. C at 3.)  The application was set for
hearing on March 1, 2017.)  (*Id.* at 2.)  That same day, GES removed the case to this
Court on the basis of diversity jurisdiction.  (Dkt. 1.)

On March 2, 2017, Freeman filed an *ex parte* application in this Court seeking a
temporary restraining order ("TRO") "preventing GES from seeking to enforce its Non-
Compete Agreement in Nevada, or anywhere else, to the extent that: (1) such
enforcement would prevent Freeman from employing Shores, or any other GES
employee, in California; and (2) such enforcement would prevent Shores from being able
to solicit any GES customers in California while employed by Freeman in California."
(Dkt. 9-2.)  Freeman argues that such relief is warranted given the imminent preliminary
injunction hearing in the Nevada case which, if granted, would force it to "either: (1) pay
Shores for twelve months despite Freeman performing no work or services during that
time, or (2) directly or constructively terminate Shores."  (Dkt. 9-1 [hereinafter "Mot."] at
13.)  Due to the length of litigation, GES would obtain its desired benefit regardless of
whether it prevailed on the merits.  (*Id.*)  Freeman also argues that denying it "the
statutorily-protected right in California to hire the personnel of its choice for twelve
months" would constitute irreparable harm, given its investment in searching for Mr.
Shores and assembling a team for him to oversee.  (*Id.* at 15.)

On March 6, 2017, the Nevada court held a hearing on GES' motion for a
preliminary injunction against Mr. Shores.  (Dkt. 14 Ex. B.)  The court granted the
motion "to the extent Mr. Shores cannot be the sales manager and cannot do what he was
doing at Global Experience Specialists Inc."  (*Id.*)  GES was directed to submit a
proposed order "that is specific as to what [Mr. Shores] cannot do relative to the
managerial competitive aspects, noting Mr. Shores can still work for the Freeman
Company."  (*Id.*)  Pursuant to Nevada court rules, GES has 10 judicial days to submit its

proposed order, and the court directed GES to provide a proposed draft to Mr. Shores. (Dkt. 17 ¶ 4.)  GES' current draft includes the following orders: "Shores shall be and hereby is restrained, enjoined, and prohibited from soliciting or doing business with any person or entity that was a client of GES during the twelve month period preceding termination of Shores' employment with GES" and "Shores [shall] be and hereby is restrained, enjoined, and prohibited from performing services on his own behalf and/or on the behalf of any third party (including but not limited to Freeman) that are competitive with and/or similar to the services he performed for GES, including without limitation performing the following services, regardless of the title or designation of employment: securing trade show sales and services . . . ."  (*Id.* Ex. A at 9.)

## III.  DISCUSSION

A TRO is an extraordinary and drastic remedy that may only be awarded upon a clear showing that the moving party is entitled to relief.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  "A plaintiff seeking a [TRO] must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Freeman has failed to establish that it is likely to suffer *irreparable* harm in the absence of preliminary relief.  "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages."  *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  The harm Freeman alleges are, in substantial part, easily remedied through damages.  The cost of paying Mr. Shores for twelve months despite performing no services is easily calculable, as are the damages caused by diverting resources from critical projects to pay Mr. Shores, the cost of finding, training, and employing a temporary replacement, and the harm caused by placing a

temporary, less desirable candidate in Mr. Shores' role.  (Mot. at 13–15.)  The other harms Freeman identifies—a negative impact on its client relationships and good will due to employee and client relationship manager turnover, denying Freeman the statutorily-protected right in California to hire the personnel of its choice for twelve months, harm to Freeman's team dynamic, damaging Freeman's good will and public image, and potentially reducing the talent pool that Freeman could attract for its future positions in California because prospective employees would assume Freeman violates California's public policies—are speculative.  (*Id.*)  While the Court does not doubt Mr. Shores' value, Freeman has presented no evidence that he is *irreplaceable* such that the set of consequential harms it identifies become likely, not merely possible.  *Cf. Arizona Dream Act Coal.*, 757 F.3d at 1068 (relying at least in part on already-manifested harms to find irreparable injury); *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) ("To establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough. . . . Although preliminary relief may be ordered to prevent harm to a movant's reputation and goodwill, a finding of reputational harm may not be based on 'pronouncements [that] are grounded in platitudes rather than evidence.'") (quoting *Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)) (unpublished disposition).

In addition to failing to demonstrate likelihood of irreparable injury, Freeman's desired relief—enjoining GES from seeking to enforce its noncompete agreement, (Dkt. 9-2 at 2)—is prohibited by the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283.  That statute prohibits federal courts from granting "an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  Freeman's application asks this Court to enjoin GES from enforcing the noncompete agreement in Nevada or elsewhere to the extent it would prevent Mr. Shores' employment for Freeman in California, (Dkt. 9-2), which is, for all intents and purposes, enjoining the Nevada state

court proceedings.  Even though Freeman's proposed order is directed at GES, not the Nevada court, the Supreme Court has rejected that distinction.  *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 287 (1970) ("It is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties.").  The fact that Freeman is not a party to the Nevada action and the two cases raise different claims are similarly unavailing.  *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 805 (9th Cir. 2002), *as amended on denial of reh'g* (May 15, 2002) ("It has been suggested that the Act does not apply because the district court order enjoins Medtronic rather than the Tennessee proceeding itself and because the claims and the parties in the two cases are different. . . . Ordering the parties not to proceed is tantamount to enjoining the proceedings. . . . The claims in the two cases are intimately linked, albeit not identical.").  Therefore, Freeman's requested relief violates the AIA absent the applicability of one of the enumerated exceptions.

There is no judgment at issue in this proceeding and there is no suggestion that this case falls within the congressional authorization exception.  Therefore, the only potentially applicable exception is the "necessary in aid of jurisdiction" exception.  However, "a parallel in personam state court proceeding does not, in and of itself, present the sort of impediment" within that exception.  *Id.* at 806.  Such a state court proceeding only seriously impedes a federal proceeding when it threatens to render the exercise of the federal court's jurisdiction nugatory.  *Id.* at 806.  The paradigmatic example of such a threat is when litigation involves a res; the Ninth Circuit has characterized the argument that the personal rights implicated by a noncompete clause approximate a res as "facially implausible."  *Id.* at 807.  Given the preliminary stage of the Nevada state court action, Freeman's desired relief is not necessary in aid of this Court's jurisdiction.  Should that change, Freeman may renew its application.

//

For these reasons, along with the fact that the Nevada court held a hearing and granted GES' preliminary injunction on March 6, 2017, thus negating the exigency justifying *ex parte* proceedings, the Court DENIES Freeman's *ex parte* application for a TRO.

However, the Court has serious concerns about the enforceability of the agreement due to its significant restraint on Mr. Shores' employment.  The agreement precludes Mr. Shores from directly or indirectly competing with GES, performing services similar to those he provided to GES, at any of GES' competitors, including the parent companies, affiliates, and subsidiaries of those competitors, anywhere in the United States.  (Dkt. 9 Ex. B ¶ 1.6(a).)  It also precludes Mr. Shores from communicating with, accepting business from, or performing services for any of GES' customers and also any people or entities who have had conversations with GES about the possibility of doing business with them and with whom Mr. Shores had contact or indirectly handled through the discharge of his supervisory responsibilities during the twelve months preceding his separation from GES.  (*Id.* ¶ 1.6(b).)  The duration of these restrictions is twelve months. (*Id.* ¶ 1.6.)

The enforceability of the agreement is amenable to prompt judicial resolution. Accordingly, Freeman is ORDERED to file a motion for partial summary judgment as to its claim for declaratory relief by **March 27, 2017**.  GES' opposition is due **April 3, 2017**.  Freeman may file a reply by **April 10, 2017**.  A hearing on Freeman's motion will be held on **April 27, 2017, at 1:30 p.m.** in Courtroom 9B.

//
//
//
//

**IV.  CONCLUSION**

For the foregoing reasons, Freeman's *ex* parte application is DENIED.  Freeman is ORDERED to file the motion for partial summary judgment discussed herein by **March 27, 2017**. [2]

DATED:      March 10, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

_____

[2] Freeman's request for leave to file a reply to GES' opposition is DENIED AS MOOT.  (Dkt. 18.)