**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| | ) Case No.: SACV 17-00364-CJC(JDEx) |
| FREEMAN EXPOSITIONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) ORDER GRANTING PLAINTIFF'S |
| v. | ) MOTION FOR PARTIAL SUMMARY |
| | ) JUDGMENT AND DENYING |
| GLOBAL EXPERIENCE | ) DEFENDANT'S MOTION TO |
| SPECIALISTS, INC., | ) DISMISS |
| | ) |
| Defendant. | ) |
| | ) |

## I.  INTRODUCTION

On February 24, 2017, Plaintiff Freeman Expositions, Inc. ("Freeman"), filed this case in Orange County Superior Court against Defendant Global Experience Specialists, Inc. ("GES"), alleging four causes of action arising out of GES' efforts to enforce a

noncompete clause against one of its former employees who was subsequently employed by Freeman.  (Dkt. 1 Ex. B [Complaint, hereinafter "Compl."].)  GES removed the case to this Court on February 28, 2017.  (Dkt. 1.)  Before the Court is Freeman's motion for partial summary judgment, (Dkt. 27), and GES' motion to dismiss, (Dkt. 24).  For the following reasons, the Freeman's motion is GRANTED and GES' motion is DENIED.

## II.  BACKGROUND

The facts recited in this Order, unless otherwise specified, are undisputed. Freeman's Complaint alleges that it is "a leading provider of integrated services for experiential marketing, specializing in event marketing and management."  (Compl. ¶ 1.) GES "is a third party marketing company that provides technology, strategy, and logistics for exhibitions, exhibits, and events."  (*Id.* ¶ 2.)  Freeman is a Texas corporation with three offices in California; GES is a Nevada corporation.  (Dkt. 36-1 [Statement of Undisputed Facts, hereinafter "UF"] ¶¶ 1–2.)

Mr. Landon Shores, then a resident of Nevada, was hired by GES in June 2013 as a sales trainee.  (*Id.* ¶¶ 3, 42.)  On September 12, 2016, in the role of Sales Manager, Mr. Shores signed a confidentiality and noncompete agreement.  (*Id.* ¶ 4.)  The agreement prevents Mr. Shores from competing, directly or indirectly, with GES "by performing services . . . that are competitive with and/or similar to [his] services performed for [GES] during the last twelve (12) months of [his] employment" for twelve months following his separation from GES anywhere in the United States.  (*Id.* ¶ 5.)  The agreement also prohibits Mr. Shores from directly or indirectly interacting with "any customer doing business with [GES] or having had discussions with [GES'] representatives concerning the possibility of doing business" with GES during the twelve months preceding his separation from GES.  (*Id.* ¶ 6.)  Finally, the agreement contains a forum selection clause specifying Nevada state or federal court as the exclusive forum for any disputes arising

out of the agreement and a clause stating that the agreement shall be governed by Nevada law.  (*Id.* ¶ 7.)

During Mr. Shores' work at GES, "eighty to ninety percent" of his sales were for events in Las Vegas, Nevada, and the "vast majority" of his clients were "primarily engaged" in Las Vegas.  (*Id.* ¶¶ 9–10.)  In state court proceedings between GES and Mr. Shores, those parties stated that Mr. Shores also provided GES services to clients in Baltimore, Orlando, Chicago, Washington, D.C., and San Diego.  (Dkt. 26-3 at 3.)

On January 6, 2017, Mr. Shores verbally provided his resignation and two week notice to Tom Page, GES' Director of Sales.  (UF ¶ 13.)  Mr. Shores informed Mr. Page that he was moving to California to work for Freeman as he had signed and accepted Freeman's offer of a Senior Business Development Manager position[1] in Freeman's Anaheim, California office.  (*Id.* ¶ 14.)

The following day, Saturday, January 7, 2017, Daniel Higgins, the Regional Vice President of Sales for GES and a resident of California, called Mr. Shores.  (*Id.* ¶ 15.)  Mr. Shores informed him of his plan to move to California and work for Freeman.  (*Id.* ¶ 16.)  Mr. Shores claims that Mr. Higgins said that GES was going to sue him; Mr. Higgins does not recall whether he said that.  (*Id.* ¶ 17; *see* Dkt. 31-2 ¶ 4.)  It is undisputed that Mr. Higgins told Mr. Shores that he hoped Mr. Shores had enough money saved to sit around and do nothing for a year and made a statement discouraging him from signing a lease in California.  (UF ¶ 17; *see also* Dkt. 31-2 ¶ 6 ("What I did tell Mr. Shores is that he should be 100% sure of what Freeman was telling him before signing a lease.").)  In addition, Mr. Shores also claims, and Mr. Higgins denies, that Mr. Higgins told him that GES was going to make sure he did not work for Freeman and that if Mr.

---

[1] Freeman claims that it "expended significant resources" to conduct an "exhaustive," eighteen-month search to fill this position.  (UF ¶¶ 11–12.)

Shores refused to break his agreement with Freeman, he was going to become broke due to thousands of dollars of legal fees.  (UF ¶¶ 17, 18; Dkt. 31-2 ¶ 4.)  Mr. Higgins claims that he "was actually trying to be a friend to Mr. Shores and convince him to stay with GES because GES would offer him a better future than Freeman."  (Dkt. 31-2 ¶ 5.)

That same day, Jeff Quade, Chief Sales Officer for GES, called Mr. Shores.  (UF ¶ 19.)  Mr. Quade threatened Mr. Shores with lawsuits.  (*Id.* ¶ 20 ("You are going to have no income for a year.  Do you have the funds to pay for that? . . . We are going to sue you personally, so it is going to be very expensive for you.").)  At the end of the conversation, Mr. Quade said, "Do you really want to go down this road?  I see two different paths.  One path is to remain with GES and the other path is to go with Freeman and get sued and go broke.  It is a lot easier to get out of an offer letter than a non-compete agreement."  (*Id.* ¶ 21.)

On Monday, January 9, 2017, Mr. Shores returned to GES but Mr. Page escorted him from the office.  (*Id.* ¶ 22.)  As he was leaving the office, Mr. Page told Mr. Shores "You have no idea what sort of shit storm you've just started."[2]  (Dkt. 31-3 ¶ 5.)  Mr. Page asked for a phone number and email address from Mr. Shores since GES was going to file a restraining order.  (UF 24; Dkt. 31-3 ¶ 6.)  Mr. Shores had a friend and colleague return all of GES' property and confidential information in his possession and control to GES on January 11, 2017.  (UF ¶ 25.)

Mr. Shores moved to Anaheim on January 23, 2017, and began working for Freeman in its Anaheim office on February 2, 2017.  (*Id.* ¶¶ 26–27.)  His work for

---

[2] Mr. Shores states that Mr. Page said, "If you think a shit storm is going on now, its just started."  (UF ¶ 23.)  The discrepancies between that statement and the statement above cause GES to dispute this fact.  (*See id.*)  However, even though Mr. Page claims "I never attempted to intimidate Mr. Shores. . . . My comment to Mr. Shores was nothing more than a statement of my opinion that GES might pursue all legal remedies against him . . . .," (Dkt. 31-3 ¶ 5), any discrepancies are not material as the meaning of his statement is the same.

Freeman "has largely required [him to] start the process of generating sales and leads from square one." (UF ¶ 28.) Mr. Shores claims that he is not using any GES confidential information in his employment with Freeman and that there is no overlap in the clients he works with for Freeman and those he worked with for GES. (*Id.* ¶¶ 30–31.)

On February 7, 2017, GES served Mr. Shores in the lobby of Freeman's Anaheim office with a complaint and motion for preliminary injunction that it had filed in Nevada state court. (*Id.* ¶ 32.) GES sought a preliminary injunction enjoining Mr. Shores from (1) "soliciting or doing business with any clients of GES" and (2) "performing any work which would be in competition with GES." (*Id.* ¶ 33.)

Freeman filed this case against GES on February 24, 2017, in Orange County Superior Court. (*Id.* ¶ 34.) Freeman asserted four causes of action: (1) declaratory judgment that the noncompete agreement is invalid to the extent it applies or seeks to apply in California or to a California employers' ability to hire employees of its choosing, (Compl. ¶¶ 35–46); (2) intentional interference with contractual relations, (*id.* ¶¶ 47–58); (3) unfair business practices under California Business & Professions Code § 17200, (*id.* ¶¶ 59–66); and (4) unlawful business practices under California Business & Professions Code § 17200, (*id.* ¶¶ 67–75). On February 28, 2017, Freeman filed an *ex parte* application in Orange County Superior Court to enjoin GES from enforcing the noncompete agreement in Nevada or elsewhere to the extent it would prevent Mr. Shores' employment for Freeman in California. (Dkt. 1 Ex. C at 3.) The application was set for hearing on March 1, 2017. (*Id.* at 2.) That same day, GES removed the case to this Court on the basis of diversity jurisdiction. (Dkt. 1.)

On March 6, 2017, the Nevada court held a hearing on GES' motion for a preliminary injunction against Mr. Shores. (UF ¶ 47.) The court granted the motion, (*id.* ¶ 35), and GES rejected Mr. Shores' subsequent request that it agree to a California

carve-out from the preliminary injunction, (*id.* ¶¶ 36–37). The preliminary injunction issued on March 22, 2017, and it enjoins Mr. Shores for twelve months from "soliciting or doing any business with any person or entity that was a client of GES during the twelve month period" preceding his separation from GES and "performing services on his own behalf and/or on the behalf of any third party (including but not limited to Freeman) that are competitive with and/or similar to the services he performed for GES." (*Id.* ¶ 41.) At the preliminary injunction hearing, Mr. Shores' attorney was asked which state's law would be applicable, and Mr. Shores' attorney said "We're arguing Nevada law, Your Honor." (*Id.* ¶ 48.)

Pursuant to this Court's directive, (Dkt. 20), Freeman filed a motion for partial summary judgment as to its first claim for declaratory relief on the validity of the noncompete on March 27, 2017. (Dkt. 27.) That same day, GES filed a motion to dismiss Freeman's complaint or, in the alternative, stay proceedings pending resolution of the Nevada state court case. (Dkt. 24.)

## III. DISCUSSION

GES' motion to dismiss raises many of the same arguments it presents in its opposition to Freeman's motion for partial summary judgment. (*Compare* Dkt. 24-1 *with* Dkt. 31.) Accordingly, the Court first considers Freeman's motion and then turns to the remaining arguments GES raises in its motion.

### A. Freeman's Motion for Summary Judgment

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials

on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case, *Celotex Corp.*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)–(B). The opposing party may also object to the material cited by the movant on the basis that it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). But the opposing party must

show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c). "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

Freeman's summary judgment motion raises three issues that the Court must resolve: (1) the forum selection clause in the noncompete agreement, (2) the choice of law clause in the noncompete agreement, (3) whether the Court should exercise declaratory jurisdiction, and (4) whether declaratory relief is warranted in this case. The Court considers each in turn.

i.  The Forum Selection Clause

This Court has jurisdiction over the case despite the forum selection clause in the noncompete agreement specifying Nevada as the exclusive forum. Even though Freeman

is not a party to the noncompete agreement between GES and Mr. Shores, this case's reach extends to Freeman's declaratory relief claim because it seeks a declaration as to whether the noncompete is enforceable in California and accordingly is "closely related" to the noncompete agreement.  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses."); *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (discussing and applying *Manetti-Farrow*).

A forum selection clause is prima facie valid and enforceable unless the nonmoving party can show that enforcement would be "'unreasonable' under the circumstances."  *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  The burden is on the non-moving party to show that the clause should not be enforced.  *See Manetti-Farrow*, 858 F.2d at 515.  In particular, there are "three reasons that would make enforcement of a forum selection clause unreasonable: 1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; 2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and 3) if enforcement would contravene a strong public policy of the forum in which suit is brought."  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004).

Enforcing the forum selection clause would contravene California's strong public policy against noncompete agreements.  *See* Cal. Bus. & Prof. Code § 16600.  GES argues that enforcement of a forum selection clause does not contravene a strong public policy of California, relying on several district court opinions.  (Dkt. 31 at 17–19.) However, those opinions distinguish between enforcement of a forum selection clause and speculative substantive implications of proceeding in a state that, unlike California, does not have a strong public policy against noncompete agreements.  *See, e.g.*, *Hartstein*

*v. Rembrandt IP Sols., LLC*, No. 12-2270 SC, 2012 WL 3075084, at *5 (N.D. Cal. July 30, 2012) ("The problem with Plaintiff's argument is that it does not challenge the reasonableness of the forum selection clause itself, only the reasonableness of its effect."); *Mahoney v. Depuy Orthopaedics, Inc.*, No. CIVF 07-1321 AWI SMS, 2007 WL 3341389, at *8 (E.D. Cal. Nov. 8, 2007) ("Mahoney never directly addresses the forum selection clause itself.  Instead, Mahoney speculates as to how an Indiana court may or may not rule on the Agreement's choice of law clause and covenant not to compete. . . . Importantly, there is no indication that Indiana courts will not or cannot entertain Mahoney's choice of law arguments or that they cannot apply California law if it is determined that California law governs.") (citations and quotations omitted); *Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101, 1104 (S.D. Cal. 2006) (noting that the transferee forum could and did consider choice of law arguments); *Manchester v. Arista Records, Inc.*, 1981 U.S. Dist. LEXIS 18642, at *15–*16 (C.D. Cal. Sept. 15, 1981) ("If the Court adopted plaintiff's argument, each court presented with a forum selection clause issue would be forced to make a determination of the potential outcome of the litigation on the merits in the transferee forum and to consider whether that outcome would conflict with a strong public policy of the transferor forum.").

       In contrast, in this case Mr. Shores, in the Nevada proceeding, did not argue for California law to apply, but rather immediately conceded that Nevada law applied.  (*See* Dkt. 26 Ex. 3 at 11.[3])  The Nevada judge likewise held in the preliminary injunction against Mr. Shores that Nevada law applied to the noncompete agreement and that the agreement was enforceable under Nevada law.  (Dkt. 26-1 Ex. 1 ¶¶ 16–23.)  Therefore, the Court need not speculate as to whether the Nevada court will entertain Freeman's arguments that California law applies and, if so, what law the judge may decide applies.

---

[3] GES' Request for Judicial Notice, (Dkt. 26), is GRANTED.  The filings and transcript from the Nevada case are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201.

Enforcement of the forum selection clause will result in enforcement of the noncompete clause. Accordingly, enforcing the forum selection clause contravenes California public policy against noncompete agreements.

### ii.  The Choice of Law Clause

California law applies to this case despite the presence of the choice of law provision specifying Nevada law in the noncompete agreement. A court sitting in diversity jurisdiction applies the law of the forum state to determine choice of law issues. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). "In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflect a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464–65 (1992). "Under that approach, the court must first determine: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 (2001) (emphasis in original).

The parties essentially do not contest that there is a reasonable basis for the choice of Nevada law or that Nevada law is contrary to the fundamental policy of California against noncompete agreements. (Dkt. 27-1 at 11–14; Dkt. 31 at 19–21; Dkt. 36 at 9–11.)

Rather, GES argues that California does not have a materially greater interest than Nevada in the determination of the particular issue.  (*See* Dkt. 31 at 19–21.)  GES minimizes California's interest on the basis of Freeman's incorporation and headquarters being located in Texas, it operating in numerous countries around the world, and only having one eighth of its domestic offices in California; it maximizes Nevada's interests based on the facts that it is incorporated and headquartered in Nevada, it hired Mr. Shores to work for it in Nevada while he was a resident of Nevada, and that Mr. Shores has only been a California resident for a few months.  (*Id.*)

GES' arguments are unavailing.  California has a materially greater interest than Nevada in resolving the issue presented in *this* case.  The fact that Freeman is a large, international corporation does not negate California's interest in Freeman's ability to hire a California resident to work in California organizing and facilitating exhibitions to showcase California goods and services.  Similarly, the location of headquarters and state of incorporation would, if in California, implicate California's interests, but their absence does not preclude California interests.  Nevada has significant interests in this case—both because GES is based there and because Mr. Shores performed work and signed the noncompete agreement there.  However, its interest pales in comparison to California's because Freeman only seeks declaratory relief as to Mr. Shores' work in California.  (*See* Compl. ¶ 44 (seeking declaratory judgment that noncompete is invalid *to the extent it applies or seeks to apply in California* or to a California employers' ability to hire the employees of its choosing *in California*); Dkt. 27-13 (proposed order).)  Simply stated, California's domestic interest is materially greater than Nevada's interest in reaching outside of Nevada and imposing its interests on California commerce and California employment.  Accordingly, California law applies.

//
//

iii.  Declaratory Jurisdiction

While the Court is under "no compulsion to exercise [declaratory] jurisdiction," exercise of declaratory jurisdiction is appropriate in this case.  *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942).  GES relies heavily on *Brillhart* to urge the Court to not exercise declaratory jurisdiction.  (Dkt. 31 at 9–13.)  In *Brillhart*, the Supreme Court observed that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  *Id.* at 495; *see also Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366 (9th Cir. 1991) (quoting *Brillhart*).  The Ninth Circuit has identified three rationales underlying *Brillhart*: (1) avoid having federal courts needlessly determine issues of state law, particularly complex ones; (2) forum shopping to avoid state courts; and (3) duplicitous litigation.  *Chamberlain*, 931 F.2d 1361, 1366 (9th Cir. 1991).

Exercising declaratory jurisdiction here does not contravene these factors and concerns of *Brillhart*.  Freeman is notably *not* a party to the Nevada state court proceedings.  The validity of the noncompete agreement in California specifically, and under California law, are not before the Nevada state court.  On the contrary, the Nevada proceedings are focused on the noncompete agreement's enforceability writ large, under Nevada law.  (*See* Dkt. 32 Ex. 6; Dkt. 26 Ex. 3.)  Furthermore, the question of the agreement's enforceability under California law is not a complex, unsettled area of California law.  The concern about avoiding state court proceedings is also not applicable here, where Freeman filed the case in Orange County Superior Court and GES removed to this Court.  (*See* Dkt. 1.)  Finally, even if the Court were to decline declaratory jurisdiction, Freeman's remaining claims would persist, negating concerns of forcing GES to unnecessarily litigate in this forum.  (*See* Compl.)

iv.  Declaratory Relief

The Declaratory Judgments Act authorizes the court to "declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  A district court has "unique and substantial discretion" to decide whether to declare the rights of litigants.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."  *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties."  *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

A declaratory judgment specifying the applicability and enforceability of the noncompete agreement to Freeman's ability to employ Mr. Shores gainfully in California will serve a useful purpose by clarifying and settling the legal relations at issue in this case.  Without such relief, GES will *de facto* prevail even if it ultimately loses on the merits.  The noncompete agreement precludes Mr. Shores from employment for twelve months, to December 2017.  Litigation will extend beyond December 2017, and the difficulty the agreement has caused Freeman and Mr. Shores will accordingly persist through the term of the noncompete.  Declaratory relief at this juncture, even as the remaining claims go forward, prevents GES from running out the clock.

The noncompete agreement is unenforceable in California.  California Business & Professions Code § 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  It "protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice.  It protects the important

legal right of persons to engage in businesses and occupations of their choosing." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008) (quotations omitted).  Mr. Shores' lawful profession, trade, and business is organizing conventions and trade shows, and the noncompete agreement precludes him from pursing such employment and contravenes California Business & Professions Code § 16600.  (UF ¶ 41.)

In addition, Mr. Shores was, by all accounts, a relatively low-level salesman at GES; his contacts, to the extent they are GES' trade secrets, are almost entirely limited to Las Vegas, Nevada and do not overlap with his work for Freeman in the Los Angeles area.  Therefore, the limited exceptions to Section 16600 which allow noncompete agreements to be enforced in California do not apply.  *See Muggill v. Reuben H. Donnelley Corp.*, 62 Cal. 2d 239, 242 (1965) (articulating trade secret exception to Section 16600); Cal. Bus. & Prof. Code § 16602 (partnership dissolution exception); *id.* § 16601 (sale of shares in a business exception).  The Court will issue a declaratory judgement forthwith stating that the GES's attempt to restrain Shores from engaging in lawful employment in California and GES's attempt to restrain Freeman from hiring the personnel of its choice violates California Business and Professions Code § 16600.

**B.  GES' Motion to Dismiss or Stay in Deference to the Nevada Proceedings**

The bulk of GES' motion to dismiss or stay these proceedings in deference to the Nevada proceedings reiterates its arguments that declaratory jurisdiction is improper and that the forum selection clause is valid and enforceable.  (Dkt. 24-1 at 5–17.)  Those arguments are discussed and rejected above.

GES also argues that the Freeman has failed to state a claim for interference with its contractual relationship with Mr. Shores, its second cause of action.  (*Id.* at 17–19.)  The Court disagrees

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  The district court may also consider additional facts in materials of which the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotations omitted)).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations.  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). GES relies on *Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004), which states that "to recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act—i.e., an act proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (Dkt. 24-1 at 18 (quoting *Reeves*, 33 Cal. 4th at 1152–53).) Because Freeman, GES claims, has failed to allege an independently wrongful act, GES demands that the intentional interference with contractual relations cause of action be dismissed with prejudice. (*See id.*)

GES' argument is predicated on its assumption, unstated in the Complaint, (*see* Compl.), that Freeman employs Mr. Shores at-will. Even if GES' assumption is correct, *Reeves* is predicated on "dual public policy considerations of employee freedom of movement and a business's right to legitimately compete in the marketplace." *Popescu v. Apple Inc.*, 1 Cal. App. 5th 39, 62 (Ct. App. 2016). Those considerations "are specific to the typical employment contract interference claim at issue in *Reeves*: where the defendant company (current employer) has induced an employee to breach an at-will employment contract he or she had with the plaintiff company (former employer and competitor of the defendant)." *Id.*; *see also Reeves*, 33 Cal. 4th at 1153 (2004) ("Under this standard, a defendant is not subject to liability for intentional interference if the interference consists merely of extending a job offer *that induces an employee to terminate his or her at-will employment*."). GES' citation to *Reeves* conveniently omits the end of the dispositive language, which makes this clear by stating that the

independently wrongful act "induced an at-will employee to leave the plaintiff."  *Reeves*, 33 Cal. 4th at 1153; *see also id.* at 1153 n.7 (explicitly refusing to "express an opinion whether an independent wrongfulness requirement would be appropriate for cases in which a defendant allegedly induces the breach of an otherwise enforceable term of an at-will contract").

In this case, Freeman's complaint details intimidation tactics by GES, which are a far cry from the tactics *Reeves*' requirement was articulated to protect.  *See id.* at 1152 (A competitor "may offer better contract terms, as by offering an employee of the plaintiff more money to work for him or by offering a seller higher prices for goods, and he may make use of persuasion or other suitable means.").  Mr. Shores also did not terminate his employment with Freeman; rather, he has been unable to maximize his productivity, leading to the harm for which Freeman brings this claim.  (*See* Compl. ¶ 53 (GES' actions have caused Freeman and [Mr.] Shores great expense to date as well as made [Mr.] Shores' performance of his responsibilities and duties . . . more difficult."); Dkt. 27-9 ¶¶ 4–6.)  Therefore, Freeman need not allege an independently wrongful act to sufficiently plead intentional interference with contractual relations.

Finally, even if the independently wrongful act requirement applies, Freeman adequately alleged such an act.  GES' motion pointedly fails to challenge the sufficiency of Freeman's third causes of action for Unfair Business Practices under California Business & Professions Code § 17200.  (See Dkt. 24-1; Compl. ¶¶ 59–75.)  The basis for those claims—GES' intimidation of Mr. Shores—is the exact same basis for Freeman's intentional interference with contractual relations.  Freeman's third cause of action sufficiently alleges that GES' conduct is proscribed by California statute and therefore *Reeves* is met.  Accordingly, GES' motion to dismiss is DENIED.[4]

---

[4] GES' motion is stylized as also seeking, in the alternative to dismissal, a stay pending final resolution of the Nevada state court proceeding between Mr. Shores and GES.  (*See* Dkt. 24-1.)  However, other

**IV.  CONCLUSION**

For the foregoing reasons, Freeman's motion for partial summary judgment as to its first cause of action for declaratory relief is GRANTED.  A judgment will issue forthwith.  GES' motion to dismiss is DENIED.


DATED:      April 24, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

than mentioning that request in passing intermittently, GES' briefing does not state why a stay would be appropriate in this case independent from its arguments regarding dismissal based on the forum selection clause and declaratory jurisdiction.  (*See id.*, Dkt. 37.)  In any event, this Court has inherent discretionary authority to stay proceedings "so as to maintain the orderly process of justice."  *Ryan v. Gonzales*, 133 S. Ct. 696, 708 (2013) (quoting *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382 (1935) *overruled by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988)).  For all reasons discussed above, the Court declines to stay this case pending resolution of the Nevada state court proceeding.